## Costello v. Primavera

*Frank DeSimene* and *Carl Martin,* for plaintiffs.
*Edward Edelsteine* and *James Kahn,* for defendants Orimavera and Dellavella.
*Paul Bechtel,* for defendant Devitt.

HERRON, *J.,* April 30, 1998—

## FACTUAL BACKGROUND

Plaintiffs Debra Costello and Donna Cattalo are pursuing legal malpractice actions premised on the improper administration of their grandfather Leonard Baehr's estate between November 1988 and May 1990 against, inter alia, attorney defendants Dennis M. Primavera, Brian McDevitt and their respective law firms Dellavella & Primavera and Fox, Differ, Callahan, Sheridan & O'Neill. They are also asserting a malpractice claim against Primavera for his representation of Leonard Baehr prior to his death in November 1988.[1]

The initial pleadings in this case were filed by the Meridian Trust Company, after it was appointed administrator of the Baehr estate by orphans' court.[2] The disputed issue presently before this court is whether the action filed by Meridian, but subsequently assigned to the plaintiffs, was timely.

A somewhat detailed factual history is thus necessary to resolve this issue. Prior to his death on November 22, 1988, the plaintiffs' grandfather, Leonard F. Baehr, was a retired policeman who lived with his only child, Joyce Furst. In the mid-1980s, Joyce Furst introduced her father to Charles Arentzen, who allegedly was "a

---

1. See *e.g.,* amended complaint, ¶¶6 & 10. Plaintiffs allege that defendant McDevitt was an attorney for the Baehr estate "from at least June 16, 1989 until May 7, 1990." Amended complant, ¶10. Since defendant McDevitt's motion for summary judgment incorporated defendant Primavera's motion, their motions will be analyzed together.

2. Amended complaint, ¶4. Meridian was appointed administrator d.b.n.c.t.a. of the estate of Leonard F. Baehr, deceased, by a May 7, 1990 decree of the Court of Common Pleas of Philadelphia County, Orphans' Court Division. *Id.*

felon convicted at least twice of theft by deception."[3] Plaintiffs allege that both their grandfather and mother fell under the "undue influence of Arentzen." Plaintiffs also allege that at the time when their grandfather first met Arentzen, he was represented in various transactions by Attorney Dennis Primavera.[4] Before long, Arentzen introduced Primavera to Baehr. Plaintiffs allege that Leonard Baehr thereafter also retained Dennis Primavera "as his personal counsel."[5]

On January 22, 1988, Primavera prepared a durable power of attorney that was signed by Baehr and named Arentzen as sole attorney-in-fact. Plaintiffs allege that at the time Baehr signed this power of attorney he was in a weakened condition, the document was prepared at the request of Arentzen, and that attorney Primavera failed to inform Baehr of his conflict of interest.[6]

---

3. Amended complaint, ¶¶16-17.

4. See amended complaint, ¶¶27, 30, & 19. Plaintiffs allege, for instance, that Primavera represented Arentzen in at least two personal injury actions and a divorce action. In addition, Primavera allegedly counseled Arentzen on expunging his criminal record. Amended complaint, ¶¶18-20.

5. Amended complaint, ¶20. In their answer to the amended complaint, defendants Primavera and Dellavella & Primavera denied this claim, stating that they "disagree with the characterization of defendant Primavera as 'personal counsel' for Baehr and are unsure as to the meaning of that term." Primavera answer, ¶20.

6. Amended complaint, ¶25. The Primavera defendants concede that Primavera prepared the power of attorney naming Arentzen, but they maintain that Baehr was "only weakened physically and was fully in possession of his faculties and aware of the consequences of his acts." They further deny that the power of attorney was prepared on the request of Arentzen or that Primavera "did so without properly advising Baehr concerning his conflict of interest." Moreover, they state that "the power was requested by Dr. Peter Duca." Primavera answer, ¶25.

They further assert that Primavera was aware that Arentzen was unfit to serve as a fiduciary in advising their grandfather Baehr and that Arentzen exercised undue influence over Baehr.[7]

After the power of attorney was executed, plaintiffs allege that Arentzen began drafting checks on Baehr's checking account payable to Arentzen.[8] On April 22, 1988, Arentzen allegedly wrote a check for $14,000 drawn on Baehr's account to purchase an automobile for his ex-wife and transferred $20,000 from Baehr's account to his own account. He also allegedly withdrew $8,000 in cash.[9] Plaintiffs allege that defendant Primavera had reason to know of these—and other—improper withdrawals of funds from Baehr's checking account by Arentzen.[10] Arentzen also allegedly wrongfully converted 10 of Baehr's monthly pension checks. In sum, during the 10-month period between January 28, 1988, when Baehr executed the power of attorney, until his death on November 22, 1988, plaintiffs allege that Arentzen had misappropriated a total of $1,038,209.25 from Baehr.[11]

On April 29, 1988, Baehr signed a new will that was prepared by Attorney Primavera, and which named Arentzen as the executor.[12] Several months later, Baehr's

7. Amended complaint, ¶¶26-27.

8. Amended complaint, ¶33. Plaintiffs allege that "Arentzen moved aggressively to take control of Baehr's finances and steal his property." *Id.*

9. Amended complaint, ¶34.

10. Amended complaint, ¶36.

11. Amended complaint, ¶¶37-38. The $1,038,209.25 figure was established by an auditor that was appointed by the orphans' court. *Id.* Defendant Primavera admits this finding. Primavera answer, ¶38.

12. Amended complaint, ¶44. Defendant Primavera acknowledges that he prepared this will. Defendant Primavera's answer, ¶44.

brother filed a petition with the orphans' court to have him declared incompetent so that a guardian could be named. Primavera represented Baehr in this incompetency hearing. Plaintiffs assert that Primavera did so "notwithstanding the fact that he also represented Arentzen, the very individual who was exploiting Baehr's diminished mental capacity by systematically stealing his funds." [13] Shortly after this incompetency hearing, Primavera prepared a codicil to Baehr's will naming Joyce Furst as his sole residuary legatee.[14]

After Baehr died on November 22, 1988, his April 29, 1988 will and its August 8, 1988 codicil were admitted to probate. Arentzen was granted letters testamentary pursuant to a petition prepared by Primavera. An account was subsequently opened at Mellon Bank in the name of the Leonard Baehr estate. On December 29, 1988, Edmund Harvey, as counsel for plaintiffs who were then contesting their grandfather's will, sent a letter to Primavera expressing concern about the administration of the estate by Arentzen; Harvey requested Primavera to supervise carefully the assets in the estate and their distribution.[15] On that same day, plaintiffs filed an appeal with the register of wills, seeking the revocation of the letters testamentary that had been granted to Arentzen.[16]

Plaintiffs allege that around June 16, 1989, attorney defendant Brian McDevitt was hired as co-counsel for the estate and that Arentzen paid him a retainer fee of $5,000.[17] Defendant McDevitt denies that he ever represented the Baehr estate; he maintains that he rep-

---

13. Amended complaint, ¶¶45-46.
14. Amended complaint, ¶48.
15. Amended complaint, ¶¶53-54 and exhibit "C."
16. Amended complaint, ¶55.
17. Amended complaint, ¶56.

resented Joyce Furst. McDevitt acknowledges receiving a $5,000 retainer fee issued as a check by Arentzen as executor of the Baehr estate. He maintains, however, that "the $5,000 represented an advance which Joyce Furst took from the estate of Leonard Baehr as the sole beneficiary of the estate."[18]

Plaintiffs allege that on July 14, 1989, Arentzen withdrew $150,000 from the Baehr estate for his own use. When plaintiffs' attorney, Harvey, sent another letter to Primavera on September 15, 1989, requesting a list of the estate assets, Primavera responded by letter dated September 28, 1989 that there had been no distributions from the estate to any beneficiaries and that he would receive a response "from our counsel" Brian McDevitt.[19] Plaintiffs allege that at this time, Primavera was "fully aware of the extent of Arentzen's theft of Baehr's funds."[20] Nonetheless, on October 24, 1989, McDevitt wrote a letter to Harvey stating that he had reviewed the administration of the estate with Primavera and found "no inappropriate activity or conduct" and that the "administration [of the estate] has been conducted in a prudent and timely fashion."[21] Plaintiffs allege that McDevitt failed to investigate the administration of the estate and Arentzen's conduct; defendant McDevitt responds to these claims by denying that he represented the estate.[22]

On April 24, 1990, at a hearing before the Honorable Joseph C. Bruno of the Philadelphia Court of Common Pleas, Orphans' Court, Arentzen was enjoined from transferring any assets he may have received under

---

18. McDevitt answer, ¶56.
19. Amended complaint, ¶¶57-59 and exhibits "D" & "E."
20. Amended complaint, ¶60.
21. Amended complaint, ¶61 and exhibit "F."
22. Amended complaint, ¶62; McDevitt answer, ¶62.

any of the powers of attorneys. Arentzen agreed at this time to resign as administrator of the Baehr estate. Meridian Trust Company, through its representative Madeline Kletzkin, assistant vice president, consented to serve as administrator of the Baehr estate. Ms. Kletzkin told the court that she was ready to apply immediately for the necessary letters.[23]

On December 10, 1992, Meridian, as administrator for the Baehr estate, filed a writ of summons that was served on defendants McDevitt, Primavera and their respective law firms.[24] On April 11, 1994, a judgment of non pros was entered for failure of counsel to appear at the call of the list for assignment for trial. This judgment was opened by order of the Honorable Sandra Mazer Moss on October 20, 1995. In December 1995, Meridian assigned its interest in this action to plaintiffs Costello and Cattalo.[25] Plaintiffs thereafter filed a com-

---

23. N.T. *In re Estate of Leonard Baehr* (April 24, 1990, Phila. Ct. Common Pleas, Orphans' Ct. Div.) at 9, attached as exhibit F to defendant Primavera's motion for summary judgment.

24. Prior to this, Meridian had petitioned the orphans' court to appoint an auditor to investigate Arentzen's transactions pursuant to the Baehr power of attorney and the estate. In February 1993, the auditor's report was filed. A hearing was subsequently held before the Honorable Kathryn Lewis on December 6, 1994, and the adjudications were issued on December 22, 1994. The orphans' court found that Arentzen had wrongfully converted Baehr's funds; a surcharge of $1,040,709.25 was entered against him regarding the power of attorney, and a surcharge of $665,742.38 was entered against him regarding the administration of the Baehr estate. Amended complaint, ¶¶63-67. See also, Primavera's answer, ¶¶63-67, admitting these assertions.

25. Defendant Primavera's motion for summary judgment and plaintiffs' response at ¶6. More specifically, Meridian assigned its interest to the estate of Joyce Furst, deceased, and to Debra Costello and Donna Cattalo, the daughters of Joyce Furst and granddaughters

plaint against the defendants on December 12, 1995 and an amended complaint on January 23, 1996. After the court ruled on preliminary objections that were filed by the various defendants, defendants Primavera and McDevitt filed answers to the amended complaint. Defendant Primavera subsequently filed a motion for summary judgment asserting that plaintiffs' claims were barred by the statute of limitations. A hearing was held on November 26, 1996, but a ruling was deferred because discovery had not been completed as required by Pa.R.C.P. 1035.2. Defendant McDevitt thereafter filed a motion for summary judgment to which plaintiffs responded. Meanwhile, defendant Primavera filed various supplemental memoranda and documents. Except for their responses to the respective summary judgment motions, plaintiffs have not filed any additional memoranda. The motions are thus ripe for resolution.

## LEGAL ANALYSIS
*Negligence Claims and the Statute of Limitations*

The first issue presented by defendants' summary judgment motions is whether plaintiffs' claims against

---

of Baehr, who were also the administrators of their mother's estate. *Id.* Like so much in this case, the daughters' relationship to the Furst estate was complicated. On or about February 3, 1988, Attorney Primavera prepared a will for plaintiffs' mother, Joyce Furst, naming Arentzen as her sole heir and executor and Arentzen's children as alternate heirs. Plaintiffs allege that it was Arentzen who requested Primavera to prepare this will and that Primavera had reason to know that Arentzen was exercising undue influence over Joyce Furst. Amended complaint, ¶¶29-30 After Joyce Furst died on December 10, 1990, plaintiffs filed a caveat to her will asserting that it had been procured through the undue influence of Arentzen. This caveat was sustained by the register of wills on February 10, 1992; a subsequent appeal by Arentzen's daughter was dismissed with prejudice by the orphans' court on November 20, 1992. Amended complaint, ¶31.

defendants McDevitt and Primavera premised on negligence are barred by the two-year statute of limitations, 42 Pa.C.S. §5524. The criteria for ruling on a motion for summary judgment are set forth in Pa.R.C.P. 1035.1 through 1035.3. It is well established that summary judgment may be granted only where the pleadings, depositions, answers to interrogatories, admissions and affidavits, and expert reports "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Kirby v. Kirby,* 455 Pa. Super. 96, 101, 687 A.2d 385, 387 (1997), *app. denied,* 548 Pa. 681, 699 A.2d 735 (1997); Pa.R.C.P. 1035.1. A court may not grant summary judgment except in those cases where it is clear that the moving party is entitled to a judgment as a matter of law. Any doubts must be resolved in favor of the party opposing summary judgment and the record must be viewed "in a light most favorable to the non-moving party." *Sebelin v. Yamaha Motor Corp.,* 705 A.2d 904, 907, 1998 Pa. Super. Lexis 1, *5-6 (1998).

In Pennsylvania, a plaintiff may bring a malpractice action against his attorney on a theory of trespass or assumpsit. *Guy v. Liederbach,* 501 Pa. 47, 55, 459 A.2d 744, 748 (1983). To maintain a legal malpractice action premised on negligence in a civil action, the plaintiff must establish three conditions to prevail in his claim: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that the attorney's failure to exercise the requisite level of skill and knowledge was the proximate cause of damage to the plaintiff." *Fiorentino v. Rapoport,* 693 A.2d 208 1997 Pa. Super. Lexis 571, *11 (1997), *app. denied,* 549 Pa. 711, 701 A.2d 577 1997 Pa. Lexis 1999 (1997). Under 42 Pa.C.S. §5524, the statute of limitations for a tort action in

legal malpractice is two years. *Garcia v. Community Legal Services Corp.,* 362 Pa. Super. 484, 490, 524 A.2d 980, 983 (1987), *app. denied,* 517 Pa. 623, 538 A.2d 876 (1988). As the Pennsylvania Supreme Court observed, "the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered." *Bailey v. Tucker,* 533 Pa. 237, 252, 621 A.2d 108, 115 (1993).

The discovery rule in Pennsylvania "provides that the statute of limitations does not begin to run until the injured party is aware or reasonably should be aware of his injury and its cause." *Garcia v. Community Legal Services Corp.,* 362 Pa. Super. 484, 495, 524 A.2d at 985.[26] See also, *Robbins & Seventko Orthopedic Surgeons Inc. v. Geisenberger,* 449 Pa. Super. 367, 372, 674 A.2d 244, 246 (1996). In applying the discovery rule, courts emphasize that "[l]ack of knowledge, mistake or misunderstanding will not toll the running of the statute." *Robbins & Seventko Orthopedic Surgeons, supra* at 373, 674 A.2d at 246.

In cases involving statutes of limitation, the question of whether the statute has run is usually a question

---

26. *Garcia v. Community Legal Services* is a legal malpractice case that was decided after *Anthony v. Koppers Co. Inc.,* 284 Pa. Super. 81, 425 A.2d 428 (1981), *rev'd,* 496 Pa. 119, 436 A.2d 181 (1981), the case plaintiffs cite for its three-pronged discovery rule. See plaintiffs' memorandum of law in response to defendant Primavera's motion for summary judgment at 15. The test set forth in *Garcia* incorporates the main elements of *Koppers,* albeit in simpler terms. This court nonetheless agrees with plaintiffs that it is necessary to show not only that Meridian was aware of the injuries to Baehr and his estate but it is also necessary to demonstrate that Meridian was aware that these injuries were caused by defendants' malpractice. *Id.*

of law for the court. If, however, the issue involves resolution of a factual issue, the jury must decide. *Fiorentino v. Rapoport,* 693 A.2d 208, 1997 Pa. Super. Lexis 572, *35-36. The Pennsylvania Supreme Court has recently emphasized, however, that the party seeking to benefit from the discovery rule has the burden of establishing that it applies. See *Cochran v. GAF Corp.,* 542 Pa. 210, 216, 666 A.2d 245, 249 (1995). The party invoking this exception must thus demonstrate "reasonable diligence" which "is an objective, rather than a subjective standard." *Id.* at 217, 666 A.2d at 249. In so doing, the *Cochran* court emphasized the "well established principle that where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." *Id.* at 215, 666 A.2d at 248.

Plaintiffs Costello and Cattalo, as assignees of Meridian's claim against the defendants, stand in the place of Meridian[27] and are bound by the dates of the key filings in this case. A critical question, therefore, is determining when Meridian was aware or reasonably should have been aware of the injuries set forth in the complaint as well as the cause of these injuries. As plaintiffs argue, it is necessary to establish not only when Meridian was aware of the injuries to Baehr and his estate, but also when it knew or should have known that these injuries were caused by the defendants' alleged

27. A*mmon v. McCloskey,* 440 Pa. Super. 251, 257, 655 A.2d 549, 551-52 (1995), *alloc. denied,* 543 Pa. 689, 670 A.2d 139 (1995) (a claim for damages based on legal malpractice is assignable and the assignee stands in the shoes of the assignor); *Pa. Higher Education Assistance Agency v. Devore,* 267 Pa. Super. 74, 77, 406 A.2d 343, 344 (1979) ("an assignment does not confer upon the assignee any greater right, power or interest than that possessed by the assignor").

514

malpractice as set forth in the amended complaint.[28] Plaintiffs' particular claims in negligence as to each defendant must therefore be outlined to determine whether the writ filed on December 10, 1992 was timely. In making this determination, the period between May 7, 1990 and December 10, 1990 [29] is critical. It was in May 1990 that Meridian was appointed administrator of the Baehr estate. By this point, Arentzen had resigned as administrator of the estate and any direct involvement of McDevitt and Primavera as attorneys for the estate would have been assumed by Meridian.

Plaintiffs set forth their claims premised in negligence against Primavera and his law firm in Counts I (as to Leonard Baehr, individually) and Count III (as to the Baehr estate). Plaintiffs assert in Count I that Primavera breached his duty to Leonard Baehr by virtue of the undisclosed conflict of interest in his simultaneous representation of Arentzen whose interests were adverse to those of Baehr. Amended complaint, ¶¶70-72, 73(g).

More specifically, plaintiffs allege that Primavera breached his duty to Baehr when he:

"(a) failed to counsel Baehr as to the implications of his naming Arentzen as attorney-in-fact and executor;
. . .

(c) drafted and advised Baehr, or failed to counsel him not, to execute the will as well as the general power of attorney and Thomson-McKinnon power of attorney instruments (together, the 'powers') despite knowledge that Arentzen had been convicted on at least two occasions of theft by deception and of the other facts averred herein concerning the prior dealings of

28. Plaintiffs' memorandum of law in response to defendant Primavera's motion for summary judgment at 15.

29. The writ of summons was filed on December 10, 1992.

Arentzen with Baehr and Arentzen's undue influence over Baehr and Joyce and that Arentzen was an unfit person to be a fiduciary and had interests adverse to Baehr;

(d) either failed properly to inquire into Arentzen's use of the powers or to advise Baehr of his beliefs as to the propriety of Arentzen's use of the powers during his representation of Baehr including his representation of Baehr in connection with the proceedings to have Baehr declared an incompetent person; . . .

(f) failed to commence actions against Arentzen . . . for the damage caused Baehr by their improper and illegal conduct; . . .

(h) failed properly to review and monitor the assets of Baehr and Arentzen's conduct as averred herein, including but not limited to failing to review bank statements and cancelled checks in a timely fashion;

(k) failed to disclose Arentzen's misconduct and misappropriation to the proper authorities and parties upon discovering it; and

(l) failed properly to protect the interests of Baehr and Joyce." Amended complaint, ¶73.

Plaintiffs outline defendant Primavera's alleged breach of duty in his representation of the Baehr estate in Count III by asserting that he acted as attorney to Arentzen in representations that were adverse to the interests of the Baehr estate. Amended complaint, ¶81. More specifically, Primavera:

"(a) failed to take adequate precautions against Arentzen's misappropriation of the estate's assets;

(b) failed to inquire into or discover Arentzen's misappropriation of the estate's assets;

(c) failed to review the estate's bank statements and cancelled checks in a timely fashion;

(d) failed to advise the orphans' court, beneficiaries, Meridian (in its capacity as successor to Arentzen) or any other proper party or authority, including the orphans' court of the misappropriation of funds after the same became known or should have been known to him in the exercise of reasonable diligence; . . .

(f) negligently misrepresented that the estate (sic) properly administered; . . .

(h) failed properly to review and monitor the assets of the estate and Arentzen's conduct as averred herein; . . . ." Amended complaint, ¶84.

Plaintiffs' negligence claim against Attorney McDevitt and his law firm are set forth in Count V. Their claims are premised on McDevitt's alleged breach of duty to the Baehr estate during the period from "at least" June 16, 1989 until May 7, 1990 despite his knowledge of the various conflicts of interest.[30] More specifically, plaintiffs alleged, inter alia, that McDevitt breached his duty to the estate and its beneficiaries in that he:

"(a) failed to take adequate precautions against Arentzen's misappropriation of the estate's assets;

(b) failed to inquire into or discover Arentzen's misappropriation of the estate's assets and of Baehr's assets during Baehr's lifetime;

(c) failed to advise the orphans' court, beneficiaries, Meridian (in its capacity as the successor to Arentzen) or any other proper party or authority of the misappropriation of funds after the same became known or in the exercise of reasonable diligence should have been known to him;

---

30. Amended complaint, ¶¶10, 94(f).

(d) negligently misrepresented that the estate was properly administered; . . . .

(h) failed to disclose Arentzen's misconduct and misappropriation to the proper authorities and parties upon discovering it; and

(i) failed properly to protect the interests of the estate, the beneficiaries, and Joyce." Amended complaint, ¶94.

The defendants argue that summary judgment should be granted on their behalf because Meridian was aware of the claims set forth in the amended complaint more than two years before it was filed.[31] A starting point for analyzing this motion must be plaintiffs' pleadings. In their amended complaint, plaintiffs allege that defendants Primavera and McDevitt represented the Baehr estate until May 7, 1990. As a practical matter, therefore, defendants could not be held liable for any actions vis-a-vis the estate after this date. The key question then becomes when Meridian knew or reasonably should have known of defendants' alleged liability for acts prior to May 7, 1990.

In support of this motion, defendants present the pleadings, affidavits, deposition testimony and exhibits, admissions and notes of testimony from an April 24, 1990 hearing before orphans' court concerning the administration of the Baehr estate, which was attended by a representative from Meridian, Madeline Kletzkin (presently Ferraro). After examining these documents as well as those presented by plaintiffs, this court concludes that Meridian, through its representatives, knew

---

31. Defendant Primavera's memorandum of law in support of his summary judgment motion at 2. Defendant McDevitt incorporated his co-defendant's summary judgment motion. See defendant McDevitt's memorandum in support of his motion for summary judgment at 1.

or reasonably should have known of the claims set forth in plaintiffs' amended complaint by August 1990, but certainly no later than November 1990, more than two years before the filing of the complaint.

There are three key figures that the parties identify as representing Meridian in its capacity as administrator of the Baehr estate: Madeline Kletzkin Ferraro; Thomas Varley; and Thomas Delaney. All three of these individuals are attorneys. Madeline Kletzkin Ferraro served as assistant vice president at Meridian Asset Management during 1990.[32] She was supervised by Thomas Varley who was employed by Meridian between January 1989 to November 1992 as manager of the Delaware Valley Division for Personal Trust.[33] Thomas Delaney was assigned to represent Meridian Bank as administrator of the Baehr estate when the bank was represented by the law firm Hawes & Burke, P.C.[34] In seeking summary judgment, defendants emphasize the testimony, affidavits and admissions of Madeline Kletzkin Ferraro and Thomas Varley as well as several key written documents that they received; in opposing summary judgment, plaintiffs counter with the affidavits of Thomas Delaney. Among these three individuals, Madeline Kletzkin Ferraro was the principal Meridian Bank officer assigned to the Baehr estate.[35] Her su-

---

32. Affidavit of Madeline Kletzkin Ferraro, Esquire (4/30/96) attached to defendant Primavera's motion for summary judgment as exhibit "D."

33. Deposition of Thomas Varley at 7-8, defendant Primavera's motion for summary judgment, exhibit "E."

34. Affidavit of Thomas Delaney (9/27/96), ¶¶3-4, attached as exhibit "G" to plaintiffs' response to defendant Primavera's motion for summary judgment.

35. Affidavit of Madeline Kletzkin Ferraro (4/30/96), ¶1, defendant Primavera's motion for summary judgment, exhibit "D."

pervisor, Thomas Varley, testified that he was only "indirectly" involved in work on the Baehr estate and that Ms. Kletzkin Ferraro was the Meridian trust officer directly responsible for the administration of the estate.[36] Likewise, Thomas Delaney stated that "[m]ost of the information I had on Baehr's estate came from the bank originally." [37] He also testified that "[f]rom May 7, 1990, the date on which Meridian was appointed administrator until she left Meridian's employment, Madeline Kletzkin Ferraro, Esquire served as Meridian's account officer for the Baehr's estate." [38] An analysis of the record presented by the parties reveals that there is no material issue of fact as to the key point of when Madeline Kletzkin Ferraro, as an assistant vice president at Meridian Asset Management, knew or reasonably should have known of the plaintiffs' negligence claims as to defendants Primavera, McDevitt and their respective law firms.

On April 24, 1990, Madeline Kletzkin attended a hearing concerning the Baehr estate that was held before the Honorable Joseph Bruno. During this hearing, plaintiffs' counsel, Frank DeSimone, expressed concern about the dissipation of the more than $1,000,000 in assets of Leonard Baehr prior to his death by Arentzen through his use of a power of attorney. Mr. DeSimone also expressed concern about the dissipation of funds from the Baehr estate. Mr. McDevitt responded that

---

36. Deposition of Thomas Varley at 7-9, defendant Primavera's motion for summary judgment, exhibit "E."

37. Deposition of Thomas Delaney at 24, defendant McDevitt's motion for summary judgment, exhibit "E."

38. Affidavit of Thomas Delaney (9/27/96), ¶5, plaintiffs' response to defendant Primavera's motion for summary judgment, exhibit "G." Significantly, Ms. Kletzkin Ferraro is the only Meridian official that is identified by Thomas Delaney in his affidavit.

Mr. DeSimone's clients were contestants to the will and their standing as to events prior to their grandfather's death was unclear; he therefore suggested that their interests would be protected by the appointment of a trust company as administrator of the estate.[39] The court thereafter accepted the resignation and renunciation of Charles Arentzen as executor of the Baehr estate in favor of Meridian Trust Company. Joyce Furst, daughter of Baehr and beneficiary under the codicil of the will, likewise renounced her right to the grant of letters.[40] At the end of the hearing, Madeline Kletzkin, who identified herself as assistant vice president at Meridian Trust Company, stated that she had authority to consent to the administration of the Baehr estate; on questioning by the court, she affirmed her intent to apply immediately for the necessary letters.[41]

By late April 1990, therefore, Ms. Kletzkin Ferraro had been put on notice of potential dissipation of funds from Baehr prior to his death by virtue of Arentzen's alleged misuse of a power of attorney. She was also put on notice of concerns about dissipation of funds from the estate. Not only did she learn this through Mr. DeSimone's testimony at the orphans' court hearing, but she was told by Mr. McDevitt that he believed Arentzen had "inappropriately taken money out of the Leonard Baehr estate account." [42] These warnings about the misdeeds of Arentzen, however, would not suffice to bring an action against McDevitt or Primavera. Before

39. N.T. *In re Estate of Leonard Baehr* (4/24/90, Phila. Ct. Common Pleas, Orphans' Ct. Div.) at 3-5, defendant Primavera's motion for summary judgment, exhibit "F."

40. *Id.* at 6-8.

41. *Id.* at 8-9.

42. Supplemental affidavit of Madeline Kletzkin Ferraro (2/26/97), ¶3, defendant McDevitt's motion for summary judgment, exhibit "C."

long, however, Ms. Kletzkin Ferraro uncovered information that was necessary for framing the allegations against Primavera and McDevitt set forth in plaintiffs' amended complaint.

As early as June 1990, Ms. Kletzkin Ferraro learned that Primavera had been representing both Charles Arentzen (since at least 1988) and Leonard Baehr individually before his death as well as his estate after Baehr's death.[43] Later in June 1990, Ms. Kletzkin Ferraro was specifically alerted that this dual representation posed a potential conflict of interest because of unauthorized withdrawals by Arentzen when she received a blind copy of a letter from Primavera to his client Arentzen. In this letter dated June 19, 1990, Primavera stated that because of a potential conflict of interest, he could no longer represent Arentzen in the accounting as to the "power of attorney" account Arentzen maintained during Baehr's lifetime; he stated, however, that he would continue to represent Arentzen, as executor of the Baehr estate, as to the accounting of the estate only:[44]

"Dear Mr. Arentzen:

On Tuesday, June 26, 1990, an accounting of the 'power of attorney' account that you maintained for Leonard Baehr must be filed as per the order of Judge Bruno. Also, Judge Bruno enjoined you from transferring any assets that you acquired from Leonard Baehr.

------

43. Affidavit of Madeline Kletzkin Ferraro (4/30/96), ¶5, defendant Primavera's motion for summary judgment, exhibit "D."

44. Supplemental affidavit of Madeline Kletzkin Ferraro (2/26/97), ¶13, defendant Primavera's supplemental memorandum of law, exhibit "J"; defendant Primavera's reply brief, exhibit "A" (6/19/90 letter of Dennis Primavera to Charles Arentzen with blind copies to Thomas Delaney, Madeline Kletzkin and Brian McDevitt).

*Because of a potential conflict of interest,* I cannot represent you with reference to the power of attorney accounting. As the attorney for Charles Arentzen Jr., executor of the estate of Leonard Baehr, I will prepare the accounting of the estate account, only. ...

Very truly yours,

Dennis Primavera

blind cc: Thomas Delaney, Esquire

Madeline Kletzkin, Esquire

Brian McDevitt, Esquire" [45]

By July 1990, Ms. Kletzkin Ferraro was supplied with additional information that alerted her to the links between Arentzen's alleged dissipation of the Baehr funds and any potential liability of Primavera. Madeline Kletzkin Ferraro stated in an affidavit dated February 26, 1997:

"(9) By copy of a letter dated July 2, 1990 from Thomas Delaney, Esquire, to Dennis R. Primavera, Esquire, which I received at that time, I was made aware that Charles Arentzen had improperly removed $266,000 from the Baehr account. The withdrawals were reflected in the PSFS account statements for the Baehr estate account, *which statements I knew by August 1990 were addressed to Charles Arentzen at Dennis Primavera's office address." Id.* (emphasis added)[46]

In this July 2, 1990 letter referenced by Ms. Kletzkin Ferraro in her affidavit, Thomas Delaney notified Attorney Primavera of improper withdrawals by his client Arentzen from both the Baehr estate and the Baehr checking account prior to Baehr's death:

---

45. *Id.*

46. Supplemental affidavit of Madeline Kletzkin Ferraro (2/26/97), ¶9, defendant Primavera's supplemental memorandum of law, exhibit "J."

"Dear Dennis:

Upon review of the tax information, I discovered that Mr. Arentzen withdrew $316,000 from the estate and returned $50,000. This is apparently without any valid reason of administration.

On behalf of Meridian Bank, I demand that your client return the funds in the amount of $266,000 plus interest on or before Monday, July 9, 1990. If they are not returned, I will seek immediate relief from the court.

By the way, I have copies of numerous withdrawal slips signed by Mr. Arentzen payable to him, his family members and Faulkner Oldsmobile. These were all done while Mr. Baehr was alive and supposedly capable of signing checks." [47]

This letter lists Madeline Kletzkin along with Brian McDevitt and Frank DeSimone as an intended "cc." By August, the links between Arentzen's improper withdrawals from the Baehr estate and Primavera were even more clear because by then Madeline Kletzkin Ferraro knew that PSFS bank statements for the Baehr account were "addressed to Charles Arentzen at Dennis Primavera's office address." [48]

---

47. Defendant McDevitt's motion for summary judgment, ¶45 & exhibit "F." Plaintiffs admit that Delaney wrote this letter. See plaintiffs' response to defendant McDevitt's motion for summary judgment, ¶45. Defendant Primavera also submitted this letter by praecipe filed on May 10, 1997 to supplement the memorandum filed on March 10, 1997. It was also submitted as exhibit "C" to defendant Primavera's exhibits submitted in support of his supplemental memorandum of law (bound exhibits).

48. Supplemental affidavit of Madeline Kletzkin Ferraro, ¶9. This fact (that Primavera had possession of the checkbooks for the Baehr estate and access to statements regarding withdrawal from the account)

Thus, by August 1990, the Meridian bank officer primarily responsible for the Baehr estate knew that Meridian's attorney had warned Primavera and McDevitt in writing that Primavera's client Arentzen had withdrawn funds from the Baehr estate "without any valid reason of administration." Moreover, she was aware that Primavera had been informed that his client had made unauthorized withdrawals of funds from Baehr's account prior to his death. She had also been alerted to potential conflicts of interest by the June 19, 1990 letter written by Primavera to Arentzen. Moreover, by August 3, 1990, this Meridian bank officer was aware that bank statements for the Baehr estate had been addressed to Mr. Primavera's office address at 3200 Magee Avenue based on a letter she received from Primavera along with PSFS bank statement.[49] Finally, by November 1990, she knew that Primavera had prepared the power of attorney signed by Arentzen in January.[50]

As for McDevitt, Ms. Kletzkin Ferraro knew as early as the April 1990 orphans' court hearing of his involvement with the Baehr estate and his suspicions about Arentzen's misappropriation from it. In fact, at the orphans' court hearing before Judge Bruno in April

---

was confirmed by Thomas Delaney in his deposition; he testified that he knew about this by July 1990. Deposition of Delaney at 34-35, defendant McDevitt's motion for summary judgment, exhibit "E."

49. Affidavit of Madeline Kletzkin Ferraro at ¶6 (April 30, 1996), defendant Primavera's motion for summary judgment, exhibit "D." Primavera in an affidavit confirmed that he sent Ms. Kletzkin Ferraro these bank statements. See affidavit of Dennis Primavera (August 2, 1996), ¶8, defendant Primavera's motion for summary judgment, exhibit "I."

50. Affidavit of Madeline Kletzkin Ferraro (4/30/96), ¶9, defendant Primavera's motion for summary judgment, exhibit "D".

1990, McDevitt was characterized by plaintiffs' counsel DeSimone as being familiar with the accounts of the Baehr estate. She also knew that he represented Joyce Furst.[51] In addition, she knew that McDevitt was copied on key letters from Primavera regarding his potential conflicts of interest (June 19, 1990) and from Delaney (July 2, 1990) regarding investigations as to the misappropriation of funds from Baehr and his estate.[52]

Based on this record, there is no material issue of fact that the claims premised on negligence that were not filed by the Meridian Trust Company until December 1992 were beyond the two-year statute of limitations. The motions for summary judgment filed by defendants McDevitt and Primavera are therefore granted as to these negligence claims.

In opposing the entry of summary judgment, plaintiffs argue that the affidavit by Thomas Delaney rebuts the Ferraro affidavit, "establishing that she did not have knowledge sufficient to commence the running of the statute."[53] In addition, they invoke the *Nanty Glo* rule to argue that summary judgment cannot be granted on the basis of the Varley and Ferraro depositions/affidavits alone.[54]

These arguments are unconvincing for several reasons. Under the *Nanty Glo* rule, summary judgment may not be entered where the moving party relies ex-

51. Supplemental affidavit of Madeline Kletzkin Ferraro (2/26/97), ¶¶3, 5 and 6.

52. See *e.g.* letter from Delaney to Primavera dated July 2, 1990, defendant Primavera's supplemental memorandum of law, exhibit "C."

53. Plaintiffs' memorandum of law in response to defendant Primavera's motion for summary judgment at 19.

54. *Id.* at 20 (citing *Borough of Nanty Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932)).

clusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish that there is no material issue of fact. An exception to this rule exists, however, "where the moving party supports the motion by using admissions of the opposing party or the opposing parties' own witness." *Porterfield v. Trustees of the Hospital of the University of Pa.,* 441 Pa. Super. 529, 531-32, 657 A.2d 1293, 1294-95 (1995).

In granting summary judgment, however, this court relied on more than the affidavits of Varley or Kletzkin Ferraro to determine when Meridian knew or reasonably should have known of the claims against defendants. As the preceding analysis demonstrates, it also focused on the pleadings (to establish the last possible date of May 1990 for the defendants' involvement in the Baehr estate administration) and testimony before the orphans' court in April 1990 that was attended by Ms. Kletzkin Ferraro as representative for Meridian.[55] Written letters by Primavera (June 19, 1990) and Delaney (July 2, 1990) containing material admissions were also considered as documents alerting Ms. Kletzkin Ferraro to Meridian's negligence claims against the defendants. Finally, the affidavit and deposition testimony of Delaney was considered in establishing Ms. Kletzkin Ferraro's responsibility for representing Meridian and in corroborating her statement that Primavera held the checkbook for the Baehr estate and received the estate's bank account statements at his office address. The material facts for this case revolve around the knowledge of the Meridian bank officer responsible for the estate. Based on the record presented, it is clear that she knew,

---

55. This testimony served to alert Ms. Kletzkin Ferraro to two key issues: (1) Arentzen's improper withdrawals and (2) McDevitt's involvement with the Baehr estate.

or reasonably should have known about the estate's malpractice claims premised in negligence against the defendants by August 1990, but certainly no later than November 1990. As the Supreme Court recently observed, "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." *Cochran v. GAF Corp., supra* at 215, 666 A.2d at 248. Summary judgment is therefore entered as to plaintiffs' claims against the defendants premised on negligence.

## BREACH OF CONTRACT CLAIMS

In addition to their claims premised in negligence, plaintiffs assert breach of contract claims against the defendants. Plaintiffs assert that defendant Primavera breached an implied contract with both Leonard Baehr and the Baehr estate "to provide legal services consistent with those expected of the legal profession at large." [56] They likewise allege that defendant McDevitt has breached an implied contract to the estate. Amended complaint, Count VI. In Count II, for instance, plaintiffs assert that "[t]he conduct of Primavera described herein constituted repeated breaches of his *implied agreement* to provide Baehr with professional services consistent with those expected of the legal profession at large." Amended complaint, ¶77. The complaint does not allege a specific contract term or instruction that was breached by either defendant McDevitt or Primavera. Instead, it incorporates the factual averments previously set forth in paragraphs 1 through 75. See also, amended com-

---

56. Plaintiffs' memorandum of law in response to defendant Primavera's motion for summary judgment at 2; amended complaint, Counts II and IV.

plaint, Counts IV & VI (incorporating factual averments previously set forth as to McDevitt in paragraphs 90-96).

Defendants argue that plaintiffs may not claim the four-year statute of limitations for breach of contract, 42 Pa.C.S. §5525(3), because they have failed to establish the requisite breach of a specific contractual term or instruction.[57] This court agrees.

As a threshold issue, plaintiffs invoke the rule of coordinate jurisdiction to argue that the issue of whether their breach of contract claim is viable may not be considered by this court because the Honorable Joseph O'Keefe previously considered preliminary objections by defendant McDevitt which raised this precise issue. Because Judge O'Keefe issued an order overruling these objections, plaintiffs argue, the rule of coordinate jurisdiction applies as set forth in *Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995) applies and defendants' summary judgment motion must be denied.[58]

Pennsylvania courts have long embraced the rule that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Commonwealth v. Starr,* 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995). The policy underlying this rule is the promotion of judicial economy and efficiency by "fostering the finality of pretrial applications." *Id.* Thus in *Starr,* the Supreme Court held that an Allegheny Court of Common Pleas trial judge erred when he revoked the order of another court of common pleas judge granting a defendant's motion to represent himself at

---

57. Defendant Primavera's memorandum in support of summary judgment at 18-19.

58. Plaintiffs' memorandum of law in reply to Primavera's motion for summary judgment at 7-8 and exhibits "D" & "F."

trial. The *Starr* court noted that the first judge had granted the defendant's motion only after conducting a thorough colloquy and advising him that proceeding pro se was unwise. The second judge reversed this order, the Supreme Court concluded, without any new evidence.

Pennsylvania courts have, however, recognized exceptions to this rule. Recently, the Pennsylvania Superior Court concluded that a trial judge did not err when he granted summary judgment after another judge of the same court had previously overruled preliminary objections without opinion on the same issue. The plaintiffs in *Domineck v. Mercy Hospital*, 449 Pa. Super. 313, 673 A.2d 959 (1996), filed a complaint against the defendant hospital alleging that it breached its duty to make sure that staff attorneys carried malpractice insurance. The hospital filed preliminary objections in the nature of a demurrer, arguing that it had no duty to monitor the insurance coverage of its staff physicians. The trial judge denied these preliminary objections without an opinion. The hospital thereafter filed a motion for summary judgment on the same grounds with another judge who eventually granted summary judgment. *Id.* at 315, 673 A.2d at 960.

The plaintiffs appealed this ruling, arguing that the trial court erred in granting summary judgment on the same issues that had previously been advanced in the preliminary objections. In ruling that the trial court did not err, the Superior Court acknowledged the long-standing rule that coordinate judges may not overrule each other's decisions. It noted, however, that in *Salerno v. Philadelphia Newspapers Inc.*, 377 Pa. Super. 83, 546 A.2d 1168 (1988), it had concluded that this rule was not intended to preclude the granting of summary judgment after the denial of preliminary objections. This

is especially true if the preliminary objections were granted without an opinion. The court noted that the record before a court considering a summary judgment motion goes beyond the mere allegations of the complaint. Moreover, the issue of failure to present a claim upon which relief may be granted may be raised at any time. In fact, failure to dismiss a complaint on these grounds when merited would defeat the purpose of judicial economy underlying the coordinate jurisdiction rule. *Id.* at 315-16, 673 A.2d at 960-61 (citing *Salerno v. Philadelphia Newspapers Inc.,* 377 Pa. Super. 83, 546 A.2d 1168). Under the rationale of *Domineck,* therefore, this court may consider whether plaintiffs have set forth a valid claim for breach of contract that would entitle them to claim the relevant four-year statute of limitations.

There is no dispute that a plaintiff may maintain a legal malpractice claim against an attorney premised either in trespass or breach of contract. *Guy v. Liederbach,* 501 Pa. 47, 55, 459 A.2d 744, 748 (1983). The parties disagree, however, over whether this breach of contract claim can be based on an implied contract for competent service or whether plaintiffs must demonstrate breach of a specific contract term or instruction.[59] Controlling precedent, however, would require plaintiffs to show breach of a specific contract or terms.

The Pennsylvania Superior Court on numerous occasions has stated that a key element of a legal malpractice action premised on breach of contract is that an attorney breached a specific contractual term or instruction. In *Duke & Co. v. Anderson,* 275 Pa. Super.

---

59. Defendant Primavera's memorandum in support of summary judgment at 18-19; plaintiffs' memorandum in response to defendant Primavera's motion for summary judgment at 9-10.

65, 70, 418 A.2d 613, 616 (1980) where the plaintiff company brought a malpractice action against its attorney premised on assumpsit for failure to bring a defamation action against a newspaper, the court described the option of bringing a legal malpractice action premised in contract or negligence as giving the client a "choice: either to sue the attorney in assumpsit, *on the theory that the attorney by failing to follow specific instructions committed a breach of contract;* or to sue the attorney in trespass, on the theory that the attorney failed to exercise the standard of care that he was obliged to exercise." (emphasis added)[60]

Four years later, in *Hoyer v. Frazee,* 323 Pa. Super. 421, 470 A.2d 990 (1984), the Pennsylvania Superior Court stated that a valid contract claim against an attorney must allege breach of a specific contract provision or instruction. The plaintiffs in *Hoyer* brought a malpractice action in negligence and contract against their attorneys alleging that the attorneys' negligence caused them to purchase a 33 acre parcel of land rather than the 45 acre parcel the plaintiffs thought they were buying. The trial court concluded that the defendants did not breach their contract after applying a standard of care analysis. The Superior Court concluded that this was not error because the plaintiffs had failed to set forth a valid breach of contract claim. In reaching this conclusion, the *Hoyer* court emphasized:

"The Hoyers did not allege that the appellees failed to follow specific instructions. . . . Appellants also did

---

60. In *Duke,* the plaintiff was able to show breach of a specific instruction; nonsuit was properly entered against it, however, because it was unable to show actual damages and this must be shown whether the action is brought in negligence or contract. See generally, *Duke & Co. v. Anderson,* 275 Pa. Super. 65, 418 A.2d 613 (1980).

not aver a breach of a specific provision of their contract with appellees. *Thus, we do not believe that the first count of the Hoyers' complaint states a true contract cause of action.* Rather, the entire complaint sounds in negligence; that is, the appellees failed to exercise the appropriate standard of care." *Hoyer, supra* at 426, 470 A.2d at 992-93. (emphasis added) (citation omitted)

More recently, the Superior Court has stated that when a legal malpractice action is premised in breach of contract, "the theory is that *a breach of contract occurred when the attorney failed to follow a specific instruction of the client." Rogers v. Williams,* 420 Pa. Super. 396, 401, 616 A.2d 1031, 1033 (1992). (emphasis added) In *Rogers,* the plaintiff, who had been charged with mail fraud, argued that her attorney breached his contract to her when she pleaded guilty on his advice but without any warning that she could thus be deported. More specifically, plaintiff argued that the attorney breached her instruction to "try her case." The Superior Court rejected this argument, however, by reasoning that by pleading guilty the plaintiff had in effect modified the "contract" by accepting the plea agreement with the United States Attorney. *Id.* at 401, 616 A.2d at 1033.

In the instant case, however, plaintiffs seem to argue initially that it is not necessary to show that an express contractual agreement has been breached because "negligent performance of professional services is considered a breach of an express contract entered into between the client and the professional for those services." [61] They thus argue that the four-year statute of limitations for breach of contract for oral contracts, 42 Pa.C.S.

---

61. Plaintiffs' memorandum of law in response to defendant Primavera's motion for summary judgment at 9.

§5525(3), should apply in this case. In support of this argument, they quote, inter alia, *Moore v. McComsey,* 313 Pa. Super. 264, 269, 459 A.2d 841, 844 (1983) to the effect that "[t]he courts of Pennsylvania 'have usually treated the default or malpractice of an attorney as a breach of contract between attorney and client and have applied the [pre-1978] six year statute of limitations contained in the Act of March 27, 1713, . . . now repealed. See *Huffman Estate (No. 3),* 349 Pa. 59, [62-63], 36 A.2d 640 [642-43] (1944); *Rhines' Administrators v. Evans,* 66 Pa. 192 (1870); *Campbell's Administrator v. Boggs,* 48 Pa. 524 (1855).' "[62] An analysis of *Moore* and the Supreme Court cases cited therein, however, does not support the broad proposition that plaintiffs would have this court embrace. First, in *Moore,* the Superior Court addressed the issue of whether a malpractice action premised on breach of contract would be viable against a court appointed attorney. It concluded that such an action would not be viable: "[i]n the instant case . . . there was no contract of employment between appellant and trial counsel, for counsel had been court-appointed." *Moore, supra* at 269, 459 A.2d at 844. The logical implication that flows from this analysis is that the mere performance of legal duties for an individual does not suffice to create a viable breach of contract claim. Similarly, in *Rhines' Administrators v. Evans, supra,* the Supreme Court focused on a breach of contract claim premised on a very specific obligation: to collect a "due-bill." Likewise, in *Huffman Estate, supra,* the court focused on an attorney's failure to turn over money that he had received for his principal; failure to perform this specific obligation immediately, the Supreme Court con-

---

62. See plaintiffs' memorandum of law in response to defendant Primavera's motion for summary judgment at 10.

cluded, "is a breach of the implied contract for which an action of assumpsit will lie." *Huffman Estate,* 349 Pa. at 62, 36 A.2d at 642-43. See also, *Campbell's Administrator v. Boggs, supra* (failure of attorney to turn over money collected for a principal would be breach of an implied contract).

Two recent opinions from the Pennsylvania Supreme and Superior courts likewise suggest the need to show an express contract as a prerequisite for a legal malpractice action premised in assumpsit. See *e.g., Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108 (1993); *Fiorentino v. Rapoport,* 693 A.2d 208 (Pa. Super. 1997). In *Bailey v. Tucker, supra,* the Supreme Court outlined the parameters of a legal malpractice action premised in assumpsit:

"We now turn our attention to the second type of malpractice issue: an assumpsit claim based on breach of the attorney-client agreement. This claim is a contract claim and the *attorney's liability in this regard will be based on terms of that contract.* Thus if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue. Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Bailey, supra* at 251-52, 621 A.2d at 115. (emphasis added)

The Supreme Court thus concludes that a plaintiff's malpractice claim against an attorney when premised on assumpsit "will be based on the terms of that contract." *Id.* Of necessity, the plaintiff must establish that this contract has been breached; in determining whether there was a breach, a court must then consider whether the attorney provided "professional services consistent with those expected of the profession at large." *Id.*

The starting point for this analysis, however, is "the terms of that contract."

A subsequent opinion by the Superior Court in *Fiorentino v. Rapoport, supra,* also suggests how the contract analysis in *Bailey* is compatible with the prior precedent requiring an allegation that an attorney has breached a specific contract term or instruction. The plaintiff in *Fiorentino* brought a malpractice action against his attorney based on breach of contract. The plaintiff argued that through their proffer of legal advice and preparation of documents, his attorneys failed to protect his assets after the sale of his interests in a company. The Superior Court concluded that plaintiff had satisfied the threshold requirement of showing that the attorney failed to follow a specific instruction:

"We are cognizant of cross-appellants' argument that with a legal malpractice claim sounding in assumpsit, the plaintiff must show that the defendant attorney failed to follow the client's instruction. See *e.g., Rogers v. Williams,* 420 Pa. Super. 396, 401, 616 A.2d 1031, 1033 (1992). However, we find that this element of a contract claim has also been met. *Mr. Fiorentino testified that he told the defendants that his primary concern was receiving all the money owed to him for the sale of his interest in J & R. Furthermore, Mr. Fiorentino testified that he specifically instructed the defendants that he wanted them to draft the agreement of sale 'to make sure that I got paid.'* " *Fiorentino,* 693 A.2d at 214, 1997 Pa. Super. Lexis at *19. (emphasis added)

Thus, in analyzing the viability of a contract malpractice action, the *Fiorentino* court focused on the testimony that established an express, albeit oral, contract. Such oral testimony is unavailable in the present

case due to the deaths of Leonard Baehr, Joyce Furst and Charles Arentzen[63] who would have entered the contracts with the defendants Primavera and McDevitt. Plaintiffs nonetheless make an alternative argument that there were specific instructions or contract terms that were breached in the instant case by asking this court to consider two documents: an August 5, 1987 letter from Primavera to Baehr[64] and a December 29, 1988 letter from Edmund Harvey to Primavera.[65]

As a threshold point, neither of these letters were written by either Leonard Baehr or Joyce Furst. Plaintiffs argue that the August 5, 1987 letter from Primavera to Baehr can support an inference that "Primavera had been instructed by Mr. Baehr to get his money back from Arentzen." [66] However, this letter, which plaintiffs attach as exhibit "G" to their response to the McDevitt summary judgment motion, simply cannot support such an inference as to an express instruction by Baehr to Primavera to recover misappropriated funds from Arentzen. Primavera begins his letter to Baehr by referring to a legal action that Arentzen had initiated against the Fairfield Flying Club to recover damages for personal injuries that Arentzen suffered in an accident at the Philadelphia Northeast Airport on July 14, 1984. It then continues:

---

63. Affidavit of Thomas Delaney (9/27/96) ¶16, plaintiffs' response to defendant Primavera's motion for summary judgment, exhibit G. According to Delaney, Arentzen died in December 1992.

64. Plaintiffs' memorandum of law in response to McDevitt's motion for summary judgment at 8-9, referencing exhibits "G-1" and "G-2."

65. Plaintiffs' memorandum of law in response to McDevitt's motion for summary judgment at 9-10, referencing exhibit "H."

66. Plaintiffs' memorandum of law in response to McDevitt's motion for summary judgment at 9.

"Mr. Arentzen has authorized this office to retain out of his net proceeds an amount equal to those funds which have been advanced to Mr. Arentzen either on a personal or business basis in order to fully and completely protect those monies advanced.

"At the appropriate time I will request a statement of any monies advanced to Mr. Arentzen for my files. In the meantime, by his signature at the bottom of this letter Mr. Arentzen is hereby ratifying this agreement." [67]

The most obvious point about this letter is that it makes no mention whatsoever of any instructions by Leonard Baehr to Primavera to recover funds misappropriated by Arentzen. At best, it reflects an initiative by *Arentzen* that Primavera hold funds "equal to those funds which have been advanced to Mr. Arentzen . . . ." These ambiguities cannot serve as evidence of express instructions from *Leonard Baehr* to Dennis Primavera. Moreover, since this letter was dated April 27, 1987, it was written *before* Primavera prepared the power of attorney that allegedly enabled Arentzen to misappropriate Baehr's funds during the 10-month period outlined in plaintiffs' complaint between January 22, 1988 (when the power of attorney was signed) and November 1988 (when Baehr died).[68]

The second document that plaintiffs suggest could indicate express instructions, the December 29, 1988 letter from Edmund Harvey to Primavera, likewise does not reflect the intentions of either Leonard Baehr or Joyce Furst. Although this letter contains instructions regarding the administration of the Baehr estate, and

---

67. Letter dated 8/5/87 from Primavera to Baehr, plaintiffs' response to the McDevitt summary judgment motion, exhibit "G."

68. See amended complaint, ¶¶25 & 38.

in particular the safeguarding of the estate's assets, the letter on its face was written on behalf of Donna Cattalo and Debra Costello *"who have determined to contest the writings presented for probate as their grandfather's 'will.' "* [69] Since plaintiffs have failed to present any evidence that at the time this letter was written they were named beneficiaries to the will referenced by their attorney's letter,[70] they would lack standing to make binding instruction as to the administration of the estate. The issue of whether instructions by potential beneficiaries who are contesting a will would be binding on that estate's executor or his attorney has not been addressed by either party. The Supreme Court, however, has crafted a carefully restricted cause of action for *named legatees* in a will as third party beneficiaries with privity or standing to bring a malpractice action premised in contract against an attorney who prepared a will. *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983).[71] The careful limitations set forth in *Guy* suggests

69. Letter from Edmund Harvey to Primavera (December 29, 1988), plaintiffs' response to defendant McDevitt's motion for summary judgment, exhibit "H."

70. The amended complaint states that on April 29, 1988, Baehr "signed a new will which substantially increased Joyce's interest in his estate and named Arentzen as the executor." It further alleges that Primavera was the scrivener. ¶44. By a codicil that Baehr signed on August 8, 1988, Joyce Furst was named the sole residuary legatee. ¶48. After Baehr's death, this will and codicil were admitted to probate in Philadelphia County on December 7, 1988. Amended complaint, ¶53. It was thus only a few weeks later that Harvey addressed his letter to Primavera, expressing concerns about the administration of the Baehr estate.

71. The *Guy* court outlined the contractual relations between a testator and an attorney: "In the case of a testator-attorney contract, the attorney is the promisor, promising to draft a will which carries out the testator's intention to benefit the legatees. The testator is

however, that only named beneficiaries would have standing to make binding instructions that could serve as a basis for a subsequent legal malpractice action against the attorneys of an estate except in certain circumstances involving non-named beneficiaries. In the instant case, however, the plaintiffs were in an adversarial relationship with the estate as the December 29, 1988 letter from their Attorney Harvey states in its first sentence. As at least one commentator has suggested, such an adversarial relationship poses particular obstacles to recognizing claimants as third party beneficiaries to the testator's contract with his attorney.[72] For these reasons, the December 29, 1988 letter does not suffice as a specific instruction or contract for the purposes of imposing contractual liability on the estate's attorney.

Under Pa.R.C.P. 1035.2(2), summary judgment should be granted if "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." See generally, *Ertel v. The Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 117 S.Ct. 512 (1996) ("We hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears

---

the promisee, who intends that the named beneficiaries have the benefit of the attorney's promised performance. The circumstances which clearly indicate the testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will." *Guy v. Liederbach, supra,* at 61, 459 A.2d at 752.

72. See generally, Todd A. Fuller, *"Attorney Liability to Estate Beneficiaries: The Privity Passes Through,"* 100 Dickinson Law Review 29, 50-51 (1995) (noting that a third party beneficiary analysis as to beneficiaries works best in nonadversarial cases).

the burden of proof such that a jury could return a verdict in his favor.").[73] Since plaintiffs have failed to set forth the facts or claims necessary to submit a breach of contract claim to a jury, summary judgment is granted as to their contract claims against defendants Primavera and McDevitt and their respective law firms·

## ORDER

And now, April 30, 1998, upon consideration of the motion for summary judgment filed by defendants Brian McDevitt, and Fox, Differ, Callahan, Sheridan & O'Neill, plaintiffs' response thereto and the relevant documentation, it is hereby ordered that this motion is granted for the reasons set forth in a contemporaneously filed memorandum opinion. The amended complaint is therefore dismissed with prejudice as to defendants Brian McDevitt, Esquire and Fox, Differ, Callahan, Sheridan & O'Neill.

## ORDER

And now, April 30, 1998, upon consideration of the motion for summary judgment filed by defendants Dennis Primavera and Dellavella & Primavera, the response thereto of plaintiffs, defendants' supplemental memoranda, the relevant documentation and oral argument thereon, it is hereby ordered that this motion is granted for the reasons set forth in a contemporaneously filed memorandum opinion. The amended complaint is therefore dismissed with prejudice as to defendants Dennis Primavera and Dellavella & Primavera.

---

73. The *Ertel* court noted that its holding was consistent with amended Pa.R.C.P. 1035 and specifically referenced Pa.R.C.P. 1035.2. See *Ertel, supra,* at 101 n.3, 674 A.2d at 1042 n.3.