666 A.2d 245

Shirley COCHRAN, Administratrix of the Estate of William A. Cochran, Deceased, and Shirley Cochran, in her own right, Appellant

v.

GAF CORPORATION, Raymark Industries, Inc. Celotex Corporation, Successor–In–Interest to Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation, Keene Building Products Corporation, Eagle–Picher Industries, Inc., Owens Corning Fiberglas Corporation, Owens–Illinois, Inc., Garlock, Inc., A–Best Products Company, Pittsburgh Corning Corporation, Armstrong World Industries, Inc., Nicolet Industries, Inc., Successor–In–Interest to Keasby & Mattison, H.K. Porter Company, Inc., Successor–In–Interest to Southern Textile Company, Formerly Southern Asbestos Company, Combustion Engineering, Inc., Successor–In–Interest to Dietrich Company, Fibreboard Corporation, General Refractories Company, A.P. Green Refractories Company, Carey–Canada, Inc. Successor–In–Interest To Carey Canadian Mines, Ltd., and Quebec Asbestos Corp., Anchor Packing Company, Universal Refractories, Division of

Theim Corporation, A Subsidiary of Koppers, Ferro Engineering, Division of Oglebay Norton Company, Foseco, Inc., Allied Glove Corporation, BMI, Inc., Harbison–Walker Refractories, Inc., Pittsburgh Gage Company, F.B. Wright Company, George V. Hamilton, Inc., North American Refractories Company, Division of Eltra Corporation, and Kaiser Refractories, Division of Kaiser Aluminum & Chemical Corporation, Hedman Mines, Ltd., Argo Packing Company, Flexitallic Gasket Corporation, Foster Wheeler Corporation, In Its Own Right and as Successor–In–Interest to Forty-Eight Insulations, Inc., Nichias Corporation, Safety First Industries, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued March 7, 1995.

Decided Sept. 21, 1995.

Tybe A. Brett, Vickie L. Gensler, John M. Burkoff, Goldberg, Persky, Jennings & White, P.C., Pittsburgh, for appellant.

Kathy K. Condo, Reed, Smith, Shaw & McClay, Pittsburgh, for Pittsburgh Corning Corporation and Owens–Illinois, Inc.

Patrick R. Riley, Gary F. Roberson, Riley, McNulty & Hewitt, Pittsburgh, for Owens–Corning Fiberglas Corporation.

William David Geiger, Davies, McFarland & Carroll, P.C., Pittsburgh, for Safety First Industries, Inc.

Miles A. Kirshner, Rosenberg Kirshner, P.A., Todd P. Pruga, Pittsburgh, for Keene Corporation.

Alan H. Perer, Anna Maria Sosso, John C. Bogut, Jr., Swensen, Perer & Johnson, Pittsburgh, for GAF Corporation, Armstrong World Industries, Inc., A.P. Green Refractories & Flexitallic Gasket Corporation.

R. Kenneth Willman, Concetta A. Silvaggio, Ruth Antinone, John H. Kooser, Willman & Arnold, Pittsburgh, for A–Best Products Company & George V. Hamilton, Inc.

Kenneth S. Robb, for Hedman Mines, Ltd.

Robert Owsiany, Richard H. Taylor, Kirkpatrick & Lockhart, Pittsburgh, for Harbison–Walker Refractories, Inc.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Appellant, Shirley Cochran, appeals from an order and memorandum opinion of the Superior Court affirming an order of the Court of Common Pleas of Allegheny County granting Appellees' motion for summary judgment based upon the statute of limitations.

The issue presented in this case [1] is whether the trial court properly held that Appellant's claims were barred by the statute of limitations and not within the "discovery rule" exception because of a failure to exercise due diligence in pursuing the cause of decedent's illness.

[1] The identical issue also appears in the companion case of *Baumgart v. Keene*, 542 Pa. 194, 666 A.2d 238 (1995), in which the Court, on somewhat different facts, was equally divided.

214

The decedent, William Cochran, worked at Jones & Laughlin Steel from 1943 to 1944 and from 1949 to 1982 as a boilerhouse attendant, steelworker and bricklayer. On June 3, 1981, Mr. Cochran was admitted to the hospital for back pain. During this hospitalization, a right upper lobe resection was performed, resulting in a diagnosis of adenocarcinoma. At that time, the decedent had been smoking one-and-a-half packs of cigarettes daily since 1947. In response to the diagnosis of cancer, Mr. Cochran stopped smoking. There was no discussion at this time that the lung cancer was caused by work-related asbestos exposure.

On March 3, 1985, Mr. Cochran was again admitted to the hospital after several chest x-rays revealed the presence of a mass in the lower lobe of his left lung. A bronchoscopy and wedge resurrection were performed, and pathology reports confirmed the presence of a malignancy. The 1985 admission records make the first reference to Mr. Cochran's exposure to asbestos.

Following this hospitalization, Mr. Cochran contacted an attorney who arranged for Dr. Howard E. Reidbord to review the tissue slides from both the 1981 and 1985 admissions. An August 7, 1985 report by Dr. Reidbord opined that both pulmonary carcinomas were related to asbestos exposure. This report revealed that slides prepared at the time of the 1981 resection contained asbestos bodies in the pathology material.

Appellant initiated the instant action by filing a complaint on September 27, 1985. The complaint alleged that Mr. Cochran was totally disabled from carcinoma of the lung and asbestosis as a result of his exposure to asbestos-containing products manufactured by the various defendants during the course of his employment. In December of 1985, Mr. Cochran died. The Appellees filed a motion for summary judgment contending that the decedent knew or should have known his lung cancer was asbestos related in June of 1981, more than two years prior to initiating his suit. Appellant maintained that the decedent never knew, or had reason to know that his lung cancer was asbestos related until the receipt of Dr.

Reidbord's report on August 7, 1985, and, therefore, the suit was filed well within the two year limitations period. The trial court granted the motion for summary judgment, a panel of the Superior Court reversed the trial court, and an *en banc* panel of the Superior Court reinstated the order of the trial court.

■ Appellant asserts that the *en banc* panel of the Superior Court incorrectly concluded that the Appellees were entitled to summary judgment as a matter of law. Instead, she argues that the issue of whether the decedent should have known he had an asbestos related cancer in 1981 was an issue for the jury. Our standard of review in this matter is well established. A trial court's order granting summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion. *Holmes v. Lankenau Hosp.*, 426 Pa.Super. 452, 457, 627 A.2d 763, 765 (1993), *appeal denied*, 538 Pa. 671, 649 A.2d 673 (1994); *DeWeese v. Anchor Hocking Consumer and Indus. Products Group*, 427 Pa.Super. 47, 50, 628 A.2d 421, 423 (1993). Thus, we must determine whether the trial court committed an abuse of discretion or an error of law in entering summary judgment in this case.

■ Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is usually for the jury. *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992); *Smith v. Bell Telephone*, 397 Pa. 134, 142, 153 A.2d 477, 481 (1959). This is the general rule we set forth today. However, we also recognize the well established principle that where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law. *Hayward*, 530 Pa. at 325, 608 A.2d at 1043 (quoting *Sadtler v. Jackson–Cross*, 402 Pa.Super 492, 501, 587 A.2d 727, 732 (1991)).

For example, in *Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 468 A.2d 468 (1989), the plaintiff owned a tunnel damaged by a collision with a truck owned by the

defendant on June 15 or June 18, 1978. In October, 1978, the tunnel was closed and sealed until April 1979. When the tunnel was re-opened in April of 1979, the plaintiff learned that it had collapsed. The plaintiff then sued the truck's owner, and claimed that the statute of limitations was tolled by the discovery rule. We held as a matter of law that the plaintiff failed to exercise diligence in discovering that defendant's produce truck caused damage to its tunnel within the two year limitations period. We opined:

> In the present case, as a matter of law, the cause of action was discoverable by the exercise of diligence in the use of means within the reach of Raceway, and, as such, no equitable exception to the statutory limitation is warranted.... This is not the sort of blameless ignorance which compels the application of the discovery rule ...

*Id.* at 86, 468 A.2d at 471.

Thus, we have not hesitated to find as a matter of law that a party has not used reasonable diligence in ascertaining the cause of an injury thus barring the party from asserting their claim under the discovery rule.

■ In evaluating whether the trial court committed an error of law or an abuse of discretion in the instant case, we are mindful of several well-established principles of law. We note that the discovery rule is an exception to the general rule that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Pocono,* 503 Pa. at 84, 468 A.2d at 471. Therefore, one claiming the benefit of the exception bears the burden of establishing that she falls within it. As we stated in *Pocono:* "Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute." *Id.* at 85, 468 A.2d at 471. Thus, it is the Appellant's burden to establish that she is entitled to the discovery rule exception.

In *Baumgart,* the Opinion in Support of Reversal sets forth the definition of what constitutes reasonable diligence:

Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstance present in the case. Long ago we recognized that "[t]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Deemer v. Weaver,* 324 Pa. 85, 90, 187 A. 215, 217 (1936) (quoting *Madole v. Miller,* 276 Pa. 131, 137, 119 A. 829, 831 (1923)). Reasonable diligence is an objective, rather than a subjective standard. Under this standard, the plaintiff's actions must be evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985) (quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982)). *See also* Restatement (Second) of Torts § 283 comment b. Despite the objective nature of the reasonable diligence standard, "[i]t is sufficiently flexible, however, to take into account difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Burnside,* 351 Pa.Super. at 292, 505 A.2d at 988 (quoting *Petri,* 307 Pa.Super. at 271–72, 453 A.2d at 347). Thus, this case law teaches that a plaintiff is not under an absolute duty to discover the cause of his illness. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

Opinion in Support of Reversal at 207, 666 A.2d at 244.

■ Our case-law further enlightens us on what is reasonable under the facts of a particular case. It is well settled that the statute of limitations is not tolled by mistake or misunderstanding. *Pocono Intern. Raceway,* 503 Pa. at 84, 468 A.2d at 471; *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 93, 204 A.2d 473, 475 (1964). Also, a diligent investigation may require one to seek further medical examination as well as competent legal

representation.   *Murray v. Hamot Medical Center,* 429 Pa.Super. 625, 634–35, 633 A.2d 196, 201 (1993), *appeal denied,* 540 Pa. 632, 658 A.2d 796 (1994) (citing *Souders v. Atlantic Richfield Co.,* 746 F.Supp. 570, 573 (E.D.Pa.1990) citing *United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979)).

   With these principles in mind, we cannot say that the trial court committed an error of law or an abuse of discretion in granting Appellees' motion for summary judgment.   It is clear that reasonable minds would not differ as to whether the decedent exercised reasonable diligence in discovering the cause of his cancer in the instant case.   Here, the decedent was first diagnosed with lung cancer in 1981.   The record indicates that there was ample evidence to support a diagnosis of asbestos-related lung cancer at that time.   However, Mr. Cochran did not seek additional legal or medical help to ascertain the precise cause of his cancer until March of 1985. Appellant's sole explanation for this nearly four year lapse is the assertion that the decedent believed that his cancer was caused by his smoking habit and he, accordingly, stopped smoking.   There is no medical evidence in the record to support the decedent's mistaken belief that his cancer was caused solely by his smoking.

   Appellant in essence contends that her husband mistakenly diagnosed the cause of his cancer as smoking related rather than asbestos related, and did not discover the real cause until 1985 after a second hospitalization.   Unfortunately, under our case law cited *supra,* the decedent's mistaken belief cannot toll the statute of limitations for the four year period between 1981 and 1985.   The record amply demonstrates that the asbestos related nature of the cancer was apparent in June of 1981, and that the decedent failed to seek additional legal and medical help to ascertain the actual cause of his injury until March of 1985.

   Here, the decedent waited four years before diligently pursuing the cause of his illness.   Therefore, we agree with the *en banc* panel of the Superior Court that reasonable minds

could not differ as to the decedent's lack of reasonable diligence rendering this case suitable for summary judgment. The decedent's failure to ascertain the cause of his injury was the result of "somnolence," rather than "blameless ignorance." *See Ayers v. Morgan,* 397 Pa. 282, 291, 154 A.2d 788, 792 (1959), and *Pocono Intern. Raceway,* 503 Pa. at 86, 468 A.2d at 471. Accordingly, the trial court did not commit an error of law or an abuse of discretion in entering a grant of summary judgment.

The Dissent accuses us of having committed two errors. These accusations warrant a brief response. First, we are charged with having overlooked medical history information contained in the decedent's medical records. The Dissent asserts that these medical records create material facts that make summary judgment inappropriate in this case. However, we believe that the Dissent is torturing routine medical history information in an attempt to create an issue of material fact. The medical history quoted by the Dissent merely reveals that Mr. Cochran's doctors noted that he was a smoker, and recommended that he stop smoking. This information is in the nature of routine medical history taken from any patient. *See, e.g.,* Reproduced Record at 203 ("patient is a heavy smoker" under "Indications"); R.R. at 206 ("The patient smoked sixty packs a year, and quit last week." under "Social History"); R.R. at 233 ("history of heavy cigarette abuse" under "Past Medical History"); R.R. at 252 ("He is a heavy smoker, no significant alcohol history"); R.R. at 261 ("He smokes 1 to 2 packs of cigarettes per day and is known to drink from 1 to 2 fifths of ethanol per week" under "Social History"). Nowhere in the record is the decedents's smoking causally related to his lung cancer. Quite simply, these routine medical entries do not constitute a diagnosis that the decedent's smoking caused his cancer in 1981. Thus, we cannot agree with the Dissent that "it is apparent that the appellant and his physician concluded in 1981 that the lung cancer was caused by smoking." Dissent at 222. Accordingly, while the Dissent argues that we are acting as fact-finder, it would appear that the Dissent is actually combing the

record in a somewhat frantic attempt to manufacture a genuine issue of material fact where none exists.

Second, the Dissent accuses us of creating a heightened standard for establishing due diligence. Apparently, the Dissent would be in favor of a "no diligence" rule allowing anyone with a good faith, even if mistaken, belief to claim the discovery rule exception. Despite the apparent benevolence of such an approach, it is not supported by our case-law. Our cases firmly establish that the "reasonable diligence" standard has some teeth. A person claiming the discovery rule exception has the burden of establishing that he pursued the cause of his injury with "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985) (quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982). As discussed *supra,* this standard may require a party to obtain additional legal and medical advice. Also, a party may not rely on mistake or misunderstanding to toll the limitations period. The approach of the Dissent would dramatically expand the discovery rule and open the flood gates to allow anyone with a good faith lack of diligence to claim benefit of the rule. The standard proposed by the Dissent would severely erode the finality of our statute of limitations, and that would truly be a "grievous error."

For the reasons set forth above, we affirm the order of the *en banc* panel of the Superior Court.

CAPPY, J., files a dissenting opinion in which NIX, C.J., has joined.

MONTEMURO, J., is sitting by designation.

CAPPY, Justice, dissenting:

I must respectfully dissent. The question at issue in this case is whether the decedent exercised due diligence in ascertaining the cause of his injury so that his claim would fall within the discovery rule exception to the statute of limita-

tions.[1] The majority herein affirms the decision of the lower courts which found the due diligence requirement had not been met. Thus, the grant of summary judgment in favor of the appellees is sustained, and decedent's claim is dismissed.

In order to best illustrate my frustration with the majority decision, I begin my discussion by restating this Court's standard for reviewing a grant of summary judgment. Before summary judgment can be entered there must be a clear showing that there are no issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992). The appellees herein moved for summary judgment on the basis that the decedent had been diagnosed with lung cancer in June of 1981, yet suit had not been filed until September 1985. On the basis of these facts, which are not in dispute, appellees asserted the complete defense of the statute of limitations, which for the negligence claim at issue is two years. 42 Pa.C.S. § 5524(2). Appellant opposed summary judgment asserting that the discovery rule should be applied in this case as the decedent was unable to ascertain the existence of his legal injury until August of 1985.[2]

In order to benefit from the application of the discovery rule a plaintiff must meet the requirements of the following two-pronged test:

[T]he statute of limitation in "creeping disease" cases begins to run 'when the plaintiff knows, or **reasonably should know** (1) that he has been injured and (2) that his injury has been caused by another party's conduct.'

1. This same issue was before the Court in *Baumgart v. Keene*, 542 Pa. 194, 666 A.2d 238 (1995); where a Per Curiam Order affirming the decision of the Superior Court was entered, as this Court was evenly divided on the application of the discovery rule to the facts in that case.

2. Although the decedent knew he had suffered an "injury" when he was diagnosed with lung cancer in June of 1981 he was unaware that the cancer was a "legal injury." The Restatement Second of Torts defines an injury which would give rise to a cause of action as "the invasion of a legally protected interest which, if it is the legal result of a tortious act, entitles one so injured to maintain an action in tort." *Restatement (Second) of Torts § 7, comment b.*

*Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 136, 471 A.2d 493, 500 (1984), *appeal denied,* 527 Pa. 596, 589 A.2d 687 (1990) (emphasis supplied).

In this case, the majority perverts the rule by converting the condition precedent of "reasonably should know" to "*could have known.*" The majority concludes that the asbestos related nature of decedent's cancer was apparent in June of 1981. In reaching that conclusion the majority commits two errors. First, it places an oppressively high burden of due diligence upon the decedent; and second, it acts as a fact finder, a role which is clearly beyond the province of this Court in its appellate capacity, and highly inappropriate when ruling upon an appeal from a motion for summary judgment.[3]

In applying the discovery rule to this case, the majority places great emphasis upon the fact that a tissue sample taken from the decedent in 1981 revealed asbestos fibers in the lung. However, the majority fails to explain why the decedent reasonably should have known in June of 1981 that the tissue sample revealed asbestos fibers, when the tissue was *not* examined by any medical expert until August of 1985. The majority merely concludes that since the tissue sample was in existence in 1981, the information "could have been" ascertained in 1981. The majority finds decedent's explanation that he believed in 1981 that his cancer was solely related to his cigarette smoking to be not credible by concluding that "[t]here is no medical evidence in the record to support the decedent's mistaken belief that his cancer was solely caused by his smoking." (Majority opinion at p. 218). My review of the medical records in this case is at odds with the conclusion of the majority. In chronological order, the medical records reveal the following history:

> *June 3, 1981:* Decedent entered Montefiore Hospital with lower back pain. It is noted that he smoked 1 to 2 packs of cigarettes per day, no mention of asbestosis.

---

**3.** The majority at page 218–19 accuses this author of "frantically" combing the record in an attempt to manufacture a genuine issue of material fact. To the contrary, there was nothing "frantic" about the simple review of obvious factual information contained in the medical reports comprising part of this record.

*June 17, 1981:* Decedent is diagnosed with Adenocarcinoma right upper lobe. No mention of asbestosis. Lab report on lung mass contains no mention of asbestosis.

*April 27, 1982:* Upon a readmission complaining of back problems decedent is discharged with a notation that the lung findings are not significant despite previous surgery, recommendation is that he should stop smoking, as it produces a minimal cough.

*November 16, 1982:* In a disability determination, it is noted that decedent was a smoker and suffered pulmonary emphysema and carcinoma of the right lung. It is further noted that decedent has never worked in an occupation exposing him to gaseous fumes or noxious agents. There is no mention of asbestosis.

*March 3, 1985:* Decedent is admitted to Montefiore Hospital with a left lung mass. This report contains the first notation of exposure to asbestosis. A family history of lung cancer is also noted.

*August 5, 1985:* A review of the 1981 tissue of right lung reveals asbestos fibers.

*August 7, 1985:* A review of 1981 right lung tissue and 1985 left lung tissue is completed and both samples show presence of asbestos fibers. The first medical opinion is received by decedent which positively links the pulmonary carcinoma to exposure to asbestos fibers.

By my reading of the medical records in this case I am unable to agree with the majority conclusion that "[t]he record amply demonstrates that the asbestos related nature of the cancer was apparent in June of 1981 . . . ." (Majority opinion at p. 218). The majority finds the existence of the 1981 slide precludes a finding that decedent acted with due diligence in ascertaining the cause of his injury. The only way the majority can reach that conclusion is by conducting its own evaluation of the facts. That leads directly to the second point of disagreement with the majority decision.

When there are material facts at issue summary judgment can not be granted. *Pennsylvania State University v. Coun-*

*ty of Centre,* 532 Pa. 142, 615 A.2d 303 (1992). Clearly, in this case there are material facts at issue as to when this decedent "reasonably should have known" that he was injured so as to give rise to a claim in tort. Admittedly, the standard for resolving what is or is not reasonable diligence is an objective, not subjective one. It was best stated by the Superior Court in *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982):

> The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard. It is a community standard. It is sufficiently flexible, however, to take into account differences between persons, their capacity to meet certain situations and the circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes 'into account the fallibility of human beings.' *Restatement, Tort 2d, § 283, comment b. and c. Our law recognizes that, usually, what that standard is may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied.* [emphasis supplied].

I agree with the majority that where reasonable minds could *not* differ summary judgment must be entered. But I disagree with the majority's conclusion that in this case, on these facts, reasonable minds could not differ. In fact, in this case, the panel of the Superior Court which first reviewed the matter reversed the order of the trial court, with one judge dissenting; when the case was reviewed by the Superior Court en banc, six judges agreed to reinstate summary judgment, while three judges dissented. The very history of this case strongly indicates that there are material facts in dispute such that reasonable minds *could* differ on the question of whether this decedent reasonably should have known the cause of his injury.

Finally, what is most troubling to me is that the majority view leads inextricably to a conclusion that lay people, such as the decedent herein, are now charged with the duty of ferret-

ing out all possible causes for diseases such as lung cancer or face losing any legal rights that they may have. Here, it is apparent that the decedent and his physician concluded in 1981 that the lung cancer was caused by smoking. In 1981, the cancer was properly diagnosed, but apparently its cause was not ascertained. What change in the law would now require the layman patient to go beyond what appeared on its face to be a reasonable diagnosis as to illness and cause, and demand that the slide be sent to another physician for a second opinion as to causation?

In my view, notwithstanding the four year delay, it is for the jury to determine if the decedent herein "reasonably should have known" in 1981 that the cause of his lung cancer was asbestos related. A jury should determine whether an untrained lay person who has just been diagnosed with lung cancer after smoking one to two packs of cigarettes per day for many years, "reasonably should have known" that the cancer was caused by exposure to asbestos.

Accordingly, for the reasons stated herein, I cannot agree with the recommendation of the majority. I am compelled to conclude that summary judgment was inappropriate and that the issue of whether or not this decedent exercised due diligence in ascertaining the cause of his injury is a question best left to the "collective judgment, wisdom, and experience" of a jury. I respectfully dissent.

NIX, C.J., joins this dissenting opinion.