## A.L.M. v. Diocese of Allentown

C.P. of Lehigh County, nos. 2004-C-78, 2004-C-79, 2004-C-80, 2004-C-81, 2004-C-591, 2004-C-592.

*Jay N. Abramowitch* and *Richard M. Serbin,* for plaintiffs.

*Joseph F. Leeson, C. Clark Hodgson Jr., Timothy R. Coyne* and *Christine M. Debevec,* for defendants.

▇▇▇▇▇▇▇ McGINLEY, BLACK AND JOHNSON, *JJ.*

BLACK, *J.,* June 24, 2004—These six cases all arise from claims of sexual abuse allegedly perpetrated on the plaintiffs by clergy assigned to the Diocese of Allentown. Before the court are identical motions for judgment on the pleadings filed by the defendants in each of these cases.[1]

For the reasons stated below, the motions are granted in part and denied in part. The motions are granted as to Count I in each case, this count being based on a claim of statutory violation/negligence per se. However, the motions are denied as to all remaining counts.

## BACKGROUND

Seven plaintiffs have filed six lawsuits against the defendants asserting 15 counts: (1) statutory violation/

---

1. On March 10, 2004, upon the defendants' motion, the Honorable Alan M. Black entered an order consolidating the cases identified as docket nos. 2004-C-78, 2004-C-79, 2004-C-80, and 2004-C-81 for the sole purpose of determining the defendants' motions for judgment on the pleadings. On April 1, 2004, the Honorable William H. Platt, president judge, appointed an en banc panel consisting of the Honorable Carol K. McGinley, the Honorable Alan M. Black and the Honorable J. Brian Johnson to hear and decide the motions for judgment on the pleadings. Since then, two additional cases, identified as docket nos. 2004-C-591 and 2004-C-592, have also been filed. Oral argument was heard by the en banc panel on all six cases on May 12, 2004. Under the court's random assignment procedure, three of the cases had been assigned to Judge Black, two to Judge Johnson, and one to Judge McGinley.

negligence per se; (2) common-law duty of reasonable care; (3) breach of fiduciary duty; (4) failure to provide a safe and secure environment; (5) negligent supervision; (6) persons acting in concert; (7) supplying false information/negligent misrepresentation; (8) failure to protect against foreseeable risks; (9) duty to warn of unreasonable risk of harm; (10) negligent supervision or use of improper persons as agents; (11) use of incompetent persons; (12) fraudulent concealment; (13) intentional failure to supervise; (14) intentional failure to warn; and (15) punitive damages.[2]

The defendants have filed answers to the complaints raising the statute of limitations as a defense under new matter. The plaintiffs have filed replies to the defendants' new matter, and the defendants have moved for judgment on the pleadings. The defendants' motions are now before the court for disposition.

In considering the defendants' motions, we must accept as true the allegations in the plaintiffs' complaints and in their replies to new matter. These allegations are summarized as follows:

The plaintiffs each suffered sexual abuse at the hands of clergy while they were parishioners within the Diocese of Allentown. Each incident of alleged abuse occurred when the plaintiffs were minors. The incidents occurred between 1965 and 1982. The pertinent facts are outlined in the table below:

---

2. The fourth and fifth causes of action are not asserted by B.J.B. and R.D.K. in docket no. 2004-C-592. However, these plaintiffs have added counts for premises liability and negligent supervision and retention in their complaint.

| Docket no. & plaintiff | Plaintiff's date of birth | Alleged abuser | Date of abuse | Plaintiff's age when abused |
|---|---|---|---|---|
| John Doe 2004-C-081 | 10/12/1969 | Father Michael Lawrence | August 1982 | 12 |
| Bortz 2004-C-0079 | 07/31/1949 | Father Francis Fromholzer | September 1965 | 16 |
| John Doe 2 2004-C-0591 | 03/05/1959 | Father William J. Shields | 1972 | 12 or 13 |
| A.L.M. 2004-C-78 | 05/28/1968 | Monsignor Dennis Rigney | 1977 and/or 1978 | 9 |
| Beaumont 2004-C-80 | 10/23/1957 | Father Richard Gulianni | October 1971 to 1975 | 14 |
| B.J.B. 2004-C-592 | 04/29/1971 | Father Gabriel M. Patil | 1978 to 1980 | 7 |
| R.D.K 2004-C-592 | 02/06/1972 | Father Gabriel M. Patil | 1978 to 1980 | 6 |

The plaintiffs have not brought suit against the individual priests who allegedly committed the acts of abuse, and the plaintiffs acknowledge that any suits against the individual priests would be barred by the statute of limitations. Instead, the plaintiffs initiated these actions against the Diocese of Allentown and the bishops who served the Diocese during and after the incidents of abuse.

Defendant Bishop Thomas J. Welsh served as the bishop for the Diocese of Allentown from March 21, 1983 to December 16, 1997, and defendant Bishop Edward P. Cullen has been the bishop from February 9, 1998 to the present. The bishops function as leaders of the Diocese.

The plaintiffs contend that the defendants were aware of sexual abuse of children by clergy within the Diocese of Allentown, and had specific knowledge of the pedophilic tendencies of the offenders in the present cases. According to the plaintiffs, despite this knowledge, the Diocese continued to allow the offending priests to have unsupervised contact with children, including the plaintiffs, and then sought to conceal the problem.

A.L.M. makes the following specific allegations in her complaint:

"(33) Diocesan defendants knew of the sexual abuse of children by numerous Diocesan priests, including but not limited to Monsignor Rigney, and that such abusive behavior was a long standing [sic] problem with the Diocese, having received actual notice of such abuse as more fully described herein. . . .

"(43) On discovery of an offending cleric's misconduct, Diocesan defendants systematically concealed said knowledge, failed to report the misconduct to authorities and prevailed upon others not to report said misconduct to law enforcement officials, despite the fact that the Diocese had a legal obligation to report knowledge of cases of molestation to proper authorities. . . .

"(58) For decades and continuing through the present, Diocesan defendants, including the predator priests, have engaged in a covert policy and practice to conceal the problem of sexual abuse of children by parish clergy. . . .

"(62) Information as to the known criminal conduct of Diocese priests was kept secret and confidential in secret archives within the exclusive control of Bishops Cullen, Welsh and/or McShea, thereby preventing the plaintiff from having any knowledge that the Diocesan

defendants had prior notice of the abusive propensities of many Diocesan priests, including the predator priests.
. . .

"(69) Prior to the aforesaid disclosures, the plaintiffs [sic] did not know, nor did she have reason to know, that she had a cause of action against the Diocesan defendants for causing tortious injury to her due to Diocesan defendants' concealment of their knowledge of Monsignor Rigney's actions toward other minor parishioners and their vehement public denials of any truth to the allegations contained in related matters that the Diocese had a plan and/or policy to ignore complaints made against its abusive priests, including the predator priests, and to conceal such criminal conduct. . . .

"(71) The injuries that plaintiff sustained as a result of the actions of Diocesan defendants could not have been discovered by her earlier due to Diocesan defendants' fraudulent concealment of their active involvement in protecting priests known to them to be child molesters."

Similar allegations are made in the other cases except that the name of the alleged "predator priest" is different in each case.

In 2002, representatives of the Catholic Church disclosed prior incidents of sexual misconduct against minors. These disclosures included statements made by Bishop Wilton B. Gregory, president of the United States Conference of Catholic Bishops, on June 13, 2002, and by the Diocese of Allentown on April 12, 2002 and May 22, 2002. According to the plaintiffs, prior to these disclosures, the problem of ongoing sexual abuse within the Diocese of Allentown was concealed by the defen-

dants. The plaintiffs also contend they have suffered a new harm from the 2002 disclosures.

As a result of the foregoing, the plaintiffs allege that the defendants are legally responsible for the abuse they suffered. The plaintiffs assert that they were unable to discover that the defendants were a cause of the abuse before the church's disclosures in 2002.

## DISCUSSION

A motion for judgment on the pleadings is governed by Pennsylvania Rule of Civil Procedure 1034, which provides:

"(a) After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings.

"(b) The court shall enter such judgment or order as shall be proper on the pleadings."

The case law is clear that before a court may grant a motion for judgment on the pleadings, the moving party must meet a high burden. In assessing such a motion, "[t]he court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. Further, the court may grant judgment on the pleadings only *where the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise." Conrad v. Bundy,* 777 A.2d 108, 110 (Pa. Super. 2001) (emphasis added), citing *Pro Golf Manufacturing Inc. v. Tribune Review Newspaper Co.,* 761 A.2d 553, 554 (Pa. Super. 2000).

## I. *Count I: Statutory Violation/Negligence Per Se*

In Count I the plaintiffs assert a claim of statutory violation/negligence per se against the defendants. In this count the plaintiffs allege that the defendants violated a statutory duty to report child abuse pursuant to the Pennsylvania Child Protective Services Law (PCPSL), 23 Pa.C.S. §6311 et seq.

The PCPSL was enacted on December 19, 1990, and amended to its present form on December 16, 1994. The PCPSL requires that certain enumerated persons report reasonable suspicions of child abuse to the appropriate county agency. The 1994 amendment added members of the clergy to the category of individuals who are required to report suspected abuse. Prior to the 1994 amendment, clergy were not legally mandated to report suspicions of abuse.

The allegations of sexual abuse asserted by each of the plaintiffs occurred well before the 1994 amendment. The most recent allegation of abuse occurred in 1982. Thus, at the time of the alleged abusive behavior, the PCPSL did not apply to the defendants.

There is a presumption that the 1994 amendment to the PCPSL does not apply retroactively. "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. §1926. The Pennsylvania Supreme Court in *Commonwealth v. Scoleri,* 399 Pa. 110, 132-33, 160 A.2d 215, 226-27 (1960), held that "[w]henever a section or part of a law is amended, the amendment shall be construed as merging into the original law, become a part thereof, and replace the part amended and the remainder of the original law and the amendment shall be read together and

viewed as one law passed at one time; but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their original enactment, *and the new provisions shall be construed as effective only from the date when the amendment became effective.*" (emphasis in original)

There is no indication in the 1994 amendment to the PCPSL that the General Assembly intended it to be applied retroactively. Therefore, in accordance with *Scoleri,* the amendment does not apply to the cases before us. At the time of the events at issue, members of the clergy were not responsible under the PCPSL to report suspicions of child abuse.

Accordingly, Count I of the plaintiffs' complaints asserting statutory violation/negligence per se is dismissed.

## II. *All Other Counts—The Statute of Limitations*

The defendants argue that the remaining counts in the plaintiffs' complaints are barred by the two-year statute of limitations for personal injury claims. The Judicial Code provides:

"The following actions and proceedings must be commenced within two years: . . .

"(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter." 42 Pa.C.S. §5524(7).

The statute of limitations begins to run on the date the plaintiff's cause of action accrues, *i.e.,* the date the events

have occurred that entitle the plaintiff to bring suit. For a personal injury claim, this is generally the date of the plaintiff's injury. *Stroback v. Camaioni,* 449 Pa. Super. 395, 404, 674 A.2d 257, 262 (1996). Since the incidents of abuse occurred in the 1970s and 1980s, the two-year statute of limitations expired long before the filing of the plaintiffs' complaints, unless the limitations period was tolled or extended under one of the theories discussed below.

## A. Minority Tolling

The plaintiffs were all minors at the time of the incidents, ranging in age from six to 16. On May 30, 1984, the General Assembly enacted a minority tolling provision, which was amended to its present form on June 28, 2002. See 42 Pa.C.S. §5533(b). This provision delays or tolls the statute of limitations for minors until they reach the age of majority. Before this amendment, the limitations period for a cause of action on behalf of a minor was the same as for an adult.

The minority tolling provision is not applicable to the present cases for two reasons. First, each cause of action accrued prior to the enactment of the statute, and the statute is not retroactive. *Dalrymple v. Brown,* 549 Pa. 217, 221, 701 A.2d 164, 166 (1997); *Redenz by Redenz v. Rosenberg,* 360 Pa. Super. 430, 520 A.2d 883 (1987). Second, all the plaintiffs reached the age of majority more than two years before they filed the cases now before us. Therefore, the age of the plaintiffs did not toll the statute of limitations.

## B. The Discovery Rule

The plaintiffs contend that the statute of limitations was tolled under the theory of delayed discovery. The discovery rule is an exception to the general rule that the statute of limitations begins to run as soon as the cause of action accrues. The discovery rule "arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause"; it does not arise "upon a retrospective view of whether the facts were *actually* ascertained within the period." *Pocono International Raceway Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 85, 86, 468 A.2d 468, 471, 472 (1983). (emphasis in original)

This rule has been applied by our appellate courts to extend the statute of limitations in a variety of cases. See *e.g., Smith v. Bell Telephone Co. of Pa.,* 397 Pa. 134, 153 A.2d 477 (1959) (injuries to plaintiff's property from subsurface conditions); *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) (surgical sponges left in patient's body); *Giffear v. Johns-Manville Corp.,* 429 Pa. Super. 327, 632 A.2d 880 (1993) (asbestosis discovered long after exposure to asbestos).

Under the discovery rule, the statute of limitations begins to run from the time the plaintiff knew or, in the exercise of reasonable diligence, should have known of both his injury and the cause of the injury. *Bohus v. Beloff,* 950 F.2d 919, 926 (3d Cir. 1991); *Pocono International Raceway Inc., supra.* Reasonable diligence, for purposes of the discovery rule, is defined as "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Cochran v. GAF Corp.,* 542 Pa. 210, 217, 666 A.2d 245, 249 (1995). Ap-

plication of this rule is not always a question of law for the court.

"Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, *the issue is usually for the jury.*" *Id.* at 215, 666 A.2d at 248. (emphasis added)

In the cases at issue, the plaintiffs claim that they did not know or have reason to know that the defendants were a cause of their injuries until long after the abuse occurred. The plaintiffs acknowledge that they knew of their injuries at the time of the abuse and that they knew the identities of the individual clerics who abused them. However, they allege that the Diocese and the bishops were a separate cause of their harm, and that they did not know or have reason to know of *this* cause until 2002, when representatives of the Catholic Church disclosed the church's role in concealing incidents of sexual misconduct by priests against minors. These disclosures were made by Bishop Wilton B. Gregory, president of the United States Conference of Catholic Bishops on June 13, 2002, and by the Diocese of Allentown on April 12, 2002, and May 22, 2002. The plaintiffs allege that before these disclosures the problem of ongoing sexual abuse within the Diocese of Allentown was concealed by the defendants. Therefore, under the discovery rule, the plaintiffs contend that the statute of limitations did not begin to run until 2002, within two years prior to the filing of these actions.

Based on the allegations in the plaintiffs' pleadings, which we must accept as true at this stage, there remains a factual issue as to when the plaintiffs knew or should have known that the defendants were a cause of their

harm. From the pleadings alone we cannot decide this issue. Although the plaintiffs knew of their injuries and of the priests who abused them many years ago, if the plaintiffs' allegations are correct, a question remains as to when the plaintiffs knew or had reason to know that the defendants were also a cause of their harm.

The plaintiffs' claims against the defendants are to be distinguished from claims based on the vicarious liability of an employer. Under Pennsylvania law, "[i]t is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." *R.A. v. First Church of Christ,* 748 A.2d 692, 699 (Pa. Super. 2000).

The defendants argue that the plaintiffs must have known that they could have sued them at the time of the initial abuse, since the priests were in the employ of the Diocese. However, the plaintiffs had no recourse against the Diocese or the bishops under a theory of vicarious liability. The Pennsylvania Superior Court held in *R.A., supra,* that a church is not vicariously liable for the conduct of its minister where the minister sexually abused a minor living in his neighborhood. The court reasoned that where an employee acts in an outrageous manner, which is unrelated to the performance of his job, the actions are outside the scope of employment and the employer is not vicariously responsible.

The facts alleged in the present cases are very similar to the scenario in *R.A.* The acts of sexual abuse committed by the offending priests were, if true, clearly outrageous and outside the scope of their priestly duties. Thus, the plaintiffs could not have pursued claims against the

defendants at the time of the abuse based upon vicarious liability.

The defendants rely on the case of *Dalrymple v. Brown, supra.* In *Dalrymple,* the plaintiff sued on the basis of a childhood sexual assault that had occurred 23 years earlier. The plaintiff argued that the statute of limitations was tolled because she had repressed her memories of the sexual assault. The court held that repressed memory does not toll the statue of limitations under the discovery rule.

In the cases now before the court, there are no assertions of repressed memory. Therefore, the holding in *Dalrymple* is inapplicable. For the same reason, the other cases relied upon by the defendants are distinguishable. See *Hartz v. Diocese of Greensburg,* no. 03-2536 (3d Cir. March 26, 2004) (victim given alcohol by offender to diminish capacity, resulting in repressed shame and unawareness of psychological injuries for 22 years); *Getchey v. County of Northumberland,* no. 4:CV-03-0826 (M.D. Pa. February 26, 2004) (repressed memories of sexual assault for more than 47 years); *Baily v. Lewis,* 763 F. Supp. 802 (E.D. Pa. 1991) (repressed memory of sexual abuse for more than 15 years); and *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa. Super. 449, 622 A.2d 1388 (1993) (victim unaware of "psychological and emotional injuries" suffered from sexual abuse for seven years).

Under the discovery rule, the statute of limitations was tolled until the plaintiffs knew or, in the exercise of reasonable diligence, should have known that the defendants were a cause of their harm. Based on the allegations in the complaints, this did not occur until 2002, when disclosures by church officials alerted the plaintiffs to a conspiracy within the church to conceal sexual abuse against minors.

## C. Fraudulent Concealment

The plaintiffs also allege that the statute of limitations was tolled by fraudulent concealment on the part of the defendants. The plaintiffs claim that the defendants actively concealed sexual misconduct by priests against minors,[3] and that, as a result of this concealment, the plaintiffs did not become aware of their cause of action against the defendants until 2002.

Fraudulent concealment can also be a basis for tolling the statute of limitations. *Krevitz v. City of Philadelphia,* 167 Pa. Commw. 412, 420, 648 A.2d 353, 357 (1994); *Molineux v. Reed,* 516 Pa. 398, 402, 532 A.2d 792, 794 (1987). However, the test is the same as the test under the discovery rule: when did the plaintiff know, or in the exercise of reasonable diligence when should he have known, of both the injury and its cause? *Bohus v. Beloff,* 950 F.2d 919, 925-26 (3d Cir. 1991). Since we have concluded at this pleading stage that a factual issue remains as to when the plaintiffs knew or, in the exercise of reasonable diligence, should have known that the defendants were a cause of their injuries, the plaintiffs should have an opportunity to show that the statute of limitations may also have been tolled by the defendants' alleged fraudulent concealment.

This holding is consistent with the recent decision of the Westmoreland County Court of Common Pleas in *Bonson v. Diocese of Altoona-Johnstown,* no. 3104 of 2003 (Westmoreland Cty. February 2, 2004) (Caruso, J.).[4]

---

3. Complaint A.L.M., ¶43; complaint Bortz, ¶44; complaint Beaumont, ¶49; complaint Doe, ¶50; complaint Doe 2, ¶49; complaint B.J.B. and R.D.K., ¶43.

4. The Philadelphia County Court of Common Pleas in *Aquilino v. The Philadelphia Catholic Archdiocese,* no. 00327 (Philadelphia Cty.

In *Bonson,* the court addressed the statute of limitations, as it relates to a fraudulent concealment claim, even though the issue was raised on preliminary objections. The court held that "[t]he resolution of when the plaintiff should have been aware of her claims and whether the defendants fraudulently withheld information from her cannot be resolved on the face of the complaint."

Therefore, the court overruled the preliminary objections to the extent they were based upon the statute of limitations.[5] We reach the same conclusion in the cases now before us.

## D. The Claim of "New Harm"

Once the statute of limitations began to run on the plaintiffs' initial injury, it also began to run on any later injuries from the same tortious conduct. *Orozco v. Children's Hospital of Philadelphia,* 638 F. Supp. 280, 282 (E.D. Pa. 1986); *Cathcart v. Keene Industrial Insulation,* 324 Pa. Super. 123, 149, 471 A.2d 493, 507 (1984). The plaintiffs contend, however, that they suffered a new harm as a result of the 2002 disclosures, and therefore that they have a new cause of action beginning in 2002. The flaw in this argument is that the disclosures themselves were not tortious. Therefore, they cannot be the basis for a new cause of action. These disclosures establish the latest possible time for the commencement of the limitations period, since the plaintiffs certainly knew or

August 19, 2003), granted the defendants' motion for judgment on the pleadings. However, there was no opinion written by the court; so we do not know the basis for that court's decision.

5. In a later order dated May 11, 2004, Judge Caruso reconsidered other preliminary objections and sustained demurrers in favor of two of the defendants on other grounds.

should have known of the relevant facts by that time. The issue remains whether the plaintiffs knew or, in the exercise of reasonable diligence, should have known sooner of the defendants' alleged earlier misconduct.

## CONCLUSION

For these reasons, the motions for judgment on the pleadings are denied as to all but Count I of the complaints. We do not decide which, if any, of the remaining counts state a viable cause of action. This issue was not raised in the defendants' motion. Nor does our decision preclude the defendants from raising the statute of limitations issue again on a motion for summary judgment after the completion of discovery. We conclude merely that, under the legal standard applicable to motions for judgment on the pleadings, requiring us to accept as true all properly pleaded averments of fact in the plaintiffs' complaints and replies to new matter, the pleadings alone do not clearly establish that the plaintiffs knew or, in the exercise of reasonable diligence, should have known more than two years prior to the filing of their complaints that actions of the defendants were a cause of their alleged sexual abuse. Therefore, we cannot dismiss the complaints at this juncture on the basis of the statute of limitations.

## ORDER

Now, June 24, 2004, upon consideration of defendants' motions for judgment on the pleadings and plaintiffs' responses, after review of the parties' briefs and oral argument, for the reasons set forth in the accompanying opinion, it is ordered that said motions be and the same hereby are denied.