**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ELLEN KLEIN, BARBARA JONES, ELIZABETH STANKOVICS AND DAWN ROWLANDS, INDIVIDUALY, AND ALL OTHERS SIMILARLY SITUATED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | No. 2258 EDA 2018 |
| QUIXOTE VENTURES, LLP AND LIFETIME MANUFACTURE HOMES, LLP | : : : | |

Appeal from the Order Entered July 16, 2018
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2012-12358

BEFORE:   LAZARUS, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:          **FILED APRIL 17, 2019**

Ellen Klein, Barbara Jones, Elizabeth Stankovics and Dawn Rowlands (collectively, the Tenants) appeal from an order of summary judgment entered in the Northampton County Court of Common Pleas (the trial court) on July 16, 2018, in favor of Quixote Ventures, LLP (Quixote).  We hold that because the Tenants' original complaint was untimely filed, the order on review must stand.  We affirm.

**I.**

On May 17, 2012, the Tenants filed a class action complaint against Quixote (a manufactured home park landlord), Lifetime Manufacture Homes,

_____

*   Retired Senior Judge assigned to the Superior Court.

LLP (Lifetime) (a manufactured home dealer), Forks Chestnut Hill Corporation (a general partner of Lifetime), and Albert Jinks (Jinks) (a limited partner in Quixote and Lifetime). The Tenants' homes were all situated in a community called Jacob's Farm that was owned and operated by Quixote. The Tenants sought to be named as class representatives of all residents of Jacob's Farm who bought homes from Lifetime, but the class was never certified.

In their action, the Tenants asserted, *inter alia*, that Quixote and Lifetime violated the Mobile Home Park Rights Act (MHPRA). **See** 68 P.S. § 398.1 (2009).[1] Specifically, the Tenants claimed that those two parties violated the MHPRA by (a) requiring them to purchase porches, decks, garages and other upgrades from Lifetime, and (b) failing to timely disclose lumber surcharge fees which increased the total price of their homes.[2]

_____

[1] In subsequent amended complaints, the Tenants also alleged that Quixote violated the Public Utility Code (PUC) and the Unfair Trade Practices and Consumer Protection Law (UTPCPL). However, the Tenants' appellate brief only discusses two alleged MHRPA violations, so any additional claims are not at issue in this appeal. **See** Appellants' Brief, at 5; **Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of the questions involved[.]"). Regardless, those additional claims are time-barred, as discussed below.

[2] The statute has since been renamed in 2010 to the "Manufactured Home Community Rights Act" (MHCRA). **See Milby v. Pote**, 189 A.3d 1065, 1076 (Pa. Super. 2018) (explaining that unlike "mobile homes," manufactured homes "tend to be more of a long-term housing option.").

These alleged violations of the MHPRA arose from terms in the Tenants' home purchase contracts with Lifetime and their leases with Quixote to reserve the lots on which their homes would be placed. In April 2005, at closing, the last of the four-named Tenants completed her purchase with Lifetime and signed her lease with Quixote. The other three Tenants had completed their purchases and signed their leases earlier.

Prior to their respective closings, each Tenant was given an advance copy of the lease with Quixote, as well as a disclosure form stating that the agreed purchase price could be subject to an increase if the builder assessed lumber surcharge fees. They were also provided with a one-page "Questions and Answers" sheet which stated that "[a]ll decks and garage construction must be by Lifetime[.]" **See** Tenants' Sixth Amended Complaint, 12/31/13, at Exhibit C.

It is undisputed that all four Tenants possessed the above documents several months prior to their closing dates. Further, all of the closing costs and purchase prices, including the lumber surcharges, were due at closing. While they dispute the legality of certain costs and lease terms, the Tenants do not maintain that any such costs or terms were ever withheld from them prior to finalizing their home purchases and signing their leases.

In 2008, the Tenants held a community meeting with other residents of Jacob's Farm to discuss various topics such as potential legal claims regarding lumber surcharges and construction restrictions in their leases. It is not clear

from the record what occurred at that meeting to prompt the present action nor is it evident why the Tenants waited until May 2012 to file suit.

In February 2013, Lifetime filed a preliminary objection in the nature of a demurrer to the Tenants' then-operative complaint. Lifetime averred that the Tenants had failed to state a cause of action against it because the MHPRA did not govern the conduct of the dealers of mobile or manufactured homes such as Lifetime.[3] Agreeing, the trial court dismissed all claims against Lifetime. *See* Trial Court Order, 6/26/13.[4] The claims against Jinks were dismissed for similar reasons on May 9, 2014. *See* Trial Court Order, 5/9/14, at 11-13.

After years of further litigation which there is no need to recount, Quixote (Jacobs' Farm's owner and operator) moved for summary judgment. The trial court granted the motion, stating in its order that due to the prior dismissal of all claims against Lifetime and Jinks, its ruling was based only on "the conduct of the distinct entity identified as Quixote[.]" Trial Court Order,

---

[3] The claims against Forks Chestnut Hill Corp. (a general partner of Lifetime) were voluntarily dismissed by the Tenants and are not at issue here.

[4] "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted). Such an objection which seeks the dismissal of a cause of action should be sustained only when it is "clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Id.* In ruling on the objection, the trial court must consider as true "all material facts set forth in the challenged pleadings, . . . as well as all inferences reasonably deducible therefrom." *Id.*

7/16/18, at 3. Rejecting the Tenants' argument that all of the defendants should be treated as a single entity, the trial court granted Quixote's motion because none of the Tenants' claims were predicated on Quixote's conduct.

Further, as a separate basis for granting summary judgment, the trial court determined that the statute of limitations had run prior to the filing of the Tenants' original complaint. The trial court emphasized that the Tenants "had all of the documentation which they used as bases for their claims within their possession no later than the date of settlement on their home purchases." *Id.* at 8. The last of the Tenants' respective settlements was in April 2005, and the Tenants' original complaint was filed well beyond the end of the applicable six-year limitations period. The trial court ruled as a matter of law that from the time of their respective purchase settlements, the Tenants knew or should have known of their claims through the reasonable exercise of due diligence.

The Tenants appealed from the order granting summary judgment in favor of Quixote and now raise the following issues in their brief:

> **A.** Whether the trial court erred or otherwise abused its discretion in granting summary judgment because there are genuine issues of material fact regarding whether the [Tenants] were required to purchase certain upgrades, such as decks and garages, from [Lifetime] and whether the Appellee(s) violated the Mobile Home Parks Rights Act [MHPRA] by requiring this.
>
> **B**. Whether the trial court erred or otherwise abused its discretion in granting summary judgment because there are genuine issues of material fact that the appellees imposed improper lumber sur-charges and failed to timely disclose same [in violation of the MHPRA].

**C.** Whether the trial court erred or otherwise abused its discretion regarding the Court's June 26, 2013 decision to dismiss [Lifetime] and the trial court's July 16, 2018 decision stating that it was constrained by same.

**D.** Whether the trial court erred or otherwise abused its discretion in granting summary judgment because there are genuine issues of material fact that the statutes of limitations was not violated and/or this decision should have been left to the jury to decide.

Appellants' Brief, at 5.[5]

## II.

The dispositive issue here is whether the Tenants' action is time–barred. The parties agree that the causes of action now at issue are subject to a six-year limitations period,[6] but they dispute when that period began to run. While the Tenants' home purchase settlements and leases were finalized more than six years before they brought suit, they contend that their time did not begin to run until they "discovered" the purportedly illegal terms at their community meeting in November 2008. Because they filed their action in May 2012, within six years of when they discovered the purported illegality, the

---

[5] "In reviewing an order granting a motion for summary judgment . . . this Court must examine the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party." **Ash v. Cont'l Ins. Co.**, 861 A.2d 979, 980 (Pa. Super. 2004). Affirmance is proper unless the trial court has committed an error or law or an abuse of discretion. **Id.**

[6] For claims asserted under the MHPRA, a plaintiff has six years to assert a cause of action from the time it begins to accrue. **See 42 Pa.C.S. § 5527(b)** (catch-all provision providing that where, as in the 2009 version of the MHPRA, the statute of limitations is not set forth, the *de facto* period is six years).

Tenants assert that their action was timely filed. According to the Tenants, summary judgment on this issue was improper because the record evidence posed a question of fact for the jury as to whether their claims were reasonably discoverable.

It is well established in Pennsylvania law that a cause of action begins to accrue for the purposes of the limitations period "as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005); 42 Pa.C.S. § 5502(a) ("The time within which a matter must be commenced under this chapter shall be computed. . . from the time the cause of action accrued."). This period beings running even if the plaintiff lacked knowledge or misunderstood the factual or legal basis of the claim. *See Fine*, 870 A.2d at 857. However, the "discovery rule" tolls the limitations period if a plaintiff did not know or could not have known of a potential cause of action through the exercise of reasonable diligence. *See Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1174-75 (Pa. Super. 1993).

Under the standard of reasonable diligence, "a plaintiff is required to establish that he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Nicalaou v. Martin*, 195 A.3d 880, 893-94 (Pa. 2018) (quoting *Fine*, 870 A.2d at 858). "[T]he party asserting application of the discovery rule bears the burden of proof." *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011).

Because "the determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, it is generally a question for a jury to decide." **See Wilson v. El-Daief,** 964 A.2d 354, 361-362 (Pa. 2009). Nevertheless, the applicability of the discovery rule may be resolved "at the summary judgment stage where reasonable minds could not differ on the subject." **Id.; see also Cochran v. GAF Corp.,** 542 Pa. 210, 216, 666 A.2d 245, 248 (Pa. 1995) ("[W]e have not hesitated to find as a matter of law that a party has not used reasonable diligence in ascertaining the cause of an injury thus barring the party from asserting their claim under the discovery rule."). "The standard of reasonable diligence is an objective one." **Ford v. Oliver**, 176 A.3d 891, 904-05 (Pa. Super. 2017) (quoting **Mariner Chestnut Partners L.P. v. Lenfest**, 152 A.3d 265, 279 (Pa. Super. 2016)).

Viewing the present facts in the light favorable to the Tenants, their causes of action were reasonably discoverable in 2005. The Tenants do not dispute that the precise terms of the subject lumber surcharges and building restrictions were disclosed in advance of their closings. Nothing in the record suggests that the Tenants were in any way hindered from immediately assessing the legality of those surcharges and building restrictions. In fact, one of the four Tenants admitted that she first disputed them in 2005, soon after the relevant purchase and lease conditions went into effect. **See** Brief in Support of Quixote's Motion for Summary Judgment, 2/28/18, at Exhibit B, pp. 90-96 (Deposition of Ellen Klein, 12/4/17).

Accordingly, there is no basis for a jury to conclude that the limitations period was tolled by operation of the discovery rule, and the Tenants' claims are time-barred. **See Ford**, 16 A.3d at 905 (holding that plaintiffs' causes of action accrued at the time they signed a property deed because "[t]heir failure to find out what they had signed was unreasonable as a matter of law, and this question did not require factual assessment by a jury."); **see also Mahonski v. Engel**, 145 A.3d 175, 183 (Pa. Super. 2016) ("Appellants' dissatisfaction with the terms that they agreed to in the relevant documents does not allow them to avoid the time bar set forth in the applicable statute of limitations.").

Having resolved this appeal on those procedural grounds, it is unnecessary for us to address the merits of any of the other issues presented in the Tenants' brief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/19